## COMMONWEALTH *vs.* JAMES McELHANEY.

Under the Gen. Sts. c 172, § 4, and the St. of 1862, c. 84, the right to challenge jurors per‧ emptorily in a capital case must be exercised before they are examined as to their inter‧ est, bias and opinions.

This court, under the Gen. Sts. c. 173, § 7, may grant a new trial in a capital case, after sentence of death passed and a warrant issued by the Governor and Council for its exe‧ cution.

INDICTMENT for murder. At the trial before *Gray* and *Ames*, JJ., at September term 1872, the defendant was informed by the clerk of the court that he had the right to challenge peremptorily twenty-two of the persons summoned as jurors. At this point, before exercising the right, and before offering to challenge any one, the defendant asked the court to have the statute questions relating to the disqualifications of jurors put to the persons sum‧ moned as jurors, or to put said questions to them and each of them, before he challenged any one peremptorily. But the court ruled that the defendant must exercise his right of per‧ emptory challenge, if at all, before the statute questions were put to the persons summoned as jurors. The defendant was convicted of murder in the first degree, and alleged exceptions as above stated, which, " so far as the matter to which they relate is a sub‧ ject of exceptions," were allowed by the court, and were argued on November 20, 1872.

*G. Sennott*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

CHAPMAN, C. J. The question when, in the course of a capital trial, is the right of the prisoner to challenge a person peremp‧ torily, has been repeatedly considered by this court. In *Common‧ wealth* v. *Knapp*, 9 Pick. 496, the court allowed the challenge to be made after the juror had been examined on the *voir dire*. In *Commonwealth* v. *Rogers*, 7 Met. 500, it was held that under the Rev. Sts. c. 137, § 5, the right must be exercised before the statute questions put under c. 95, § 27, and c. 137, § 6, respecting his bias, interest and opinions. That decision was in conformity with the language of the statute. The fifth section above re‧ ferred to gives the right to challenge peremptorily " twenty of

the persons returned as jurors." This includes all the persons returned, though they may be subject to be set aside upon their preliminary examination on oath for the causes mentioned in the other sections referred to. In *Commonwealth* v. *Webster*, 5 Cush. 295, this decision was affirmed.

This last decision was in 1850. The General Statutes were enacted in 1859, and were a thorough revision of our statute law. Chapter 172, section 4, gives the right to challenge " twenty of the persons returned as jurors, and no more." If the Legislature were not satisfied with the construction which had been given to the Revised Statutes, it is to be presumed that they would have altered the phraseology so as to require a change of the practice. By the St. of 1862, *c.* 84, which gives the right to challenge twenty-two jurors, they are to be "from the panel called to try the same." In conformity with the statutes thus construed, the practice has been uniform, since the enactment of the Revised Statutes, to require peremptory challenges to be made before putting the questions prescribed by the statutes.

We need not decide whether the ruling was subject to exceptions. *Exceptions overruled.**

The defendant was sentenced on November 23, 1872, to death by hanging, at such time as the executive government of the Commonwealth might by its warrant appoint. Such warrant was issued on December 5, 1872, for execution on February 21, 1873, and execution of the warrant was afterwards stayed until March 21, 1873.

On March 4, 1873, a petition was filed in behalf of the defendant for a new trial for newly discovered evidence that he was insane at the time of the commission of the homicide. At the hearing of this motion before the justices before whom the trial was had, the question was raised on behalf of the Commonwealth whether this motion could be entertained after sentence of death passed and the executive warrant for execution thereof issued;

---

* By the St. of 1873, *c.* 317, § 1, " the right to challenge peremptorily any person called or returned to serve as a juror, may be exercised after it has been determined that the person so called or returned stands indifferent."

and this question was reserved for the consideration of the full court.

*T. H. Sweetser & C. J. McIntire,* for the defendant.

*C. R. Train,* Attorney General, and *W. G. Colburn,* Assistant Attorney General, for the Commonwealth.

GRAY, J. The question presented by this report is whether under the Gen. Sts. *c.* 173, § 7, a petition for a new trial can be entertained in a capital case after sentence of death passed by the court, and a warrant for execution issued by the Governor.

The Gen. Sts. *c.* 173, § 7, provide that " the Supreme Judicial Court and Superior Court may, at the term in which the trial of any indictment is had, or within one year thereafter, on the petition or motion in writing of the defendant, grant a new trial for any cause for which by law a new trial may be granted, or when it appears to the court that justice has not been done, and on such terms or conditions as the court shall direct."

The scope and extent of this provision will clearly appear by tracing the course of the previous legislation of the Commonwealth upon the subject.

This court, by virtue of its general jurisdiction, and independently of any special authority conferred upon it by statute, had the power to grant new trials, even in capital cases. *Commonwealth* v. *Green,* 17 Mass. 515. But whether an inferior court was authorized to grant a new trial on the merits in any case, civil or criminal, was at least doubtful. Bac. Ab. Trial, L.; 13 East, 416 note. *The King* v. *Mayor of Oxford,* 3 Nev. & Man. 877. *People* v. *Justices of Chenango,* 1 Johns. Cas. 179; *S. C.* 2 Caines Cas. 319.

The St. of 1830, *c.* 113, which gave to the Court of Common Pleas concurrent original jurisdiction with this court, except in Suffolk, of all crimes not capital, provided, in § 3, that that court should " have power, at the term at which the trial of any indictment shall be had or any judgment shall be rendered, or at any subsequent term thereof within six months from the time of such trial or rendition of such judgment, on petition or motion of the defendant in writing, to grant a new trial in such case, for any cause for which by the laws of this Commonwealth a new trial

may be granted, or when upon due examination it shall appear to said court that justice has not been done, upon such terms and conditions as to said court shall seem proper." A precisely similar provision, but extending the time from six months to one year, was inserted in § 4 of the St. of 1832, c. 130, which transferred to the Court of Common Pleas the entire original criminal jurisdiction of this court, in all the counties but Suffolk, except in capital cases. The criminal jurisdiction of crimes not capital in Suffolk was then, and continued under the Revised Statutes to be, vested concurrently in this court and in the Municipal Court of the city of Boston. St. 1812, c. 133. Rev. Sts. c. 81, § 17; c. 86, § 4. The Sts. of 1830 and 1832 expressly authorized the Court of Common Pleas to grant a new trial at any time within a year after judgment; and no intention is indicated or can be presumed that the powers of this court should be less extensive.

This point was made clear in the Revised Statutes, which provided in c. 82, § 30, that the Court of Common Pleas might at any time within one year after judgment in any criminal prosecution grant a new trial, for any cause for which by law a new trial might or ought to be granted, in the manner provided in c. 138; in c. 86, § 11, that the Municipal Court of Boston might grant new trials in like cases and upon the same conditions as the Court of Common Pleas; and in c. 138, § 10, as follows: " The Supreme Judicial Court and the Court of Common Pleas may, at the term in which the trial of any indictment shall be had, or within one year thereafter, on the petition or motion in writing of the defendant, grant a new trial, for any cause for which by law a new trial may be granted," &c., as in the Sts. of 1830 and 1832. The commissioners, in their notes to c. 138 of the Rev. Sts., say that " all the proceedings under the provisions contained in this chapter are distinctly marked out by the statutes now in force; " and that they have proposed only one change of any importance, and that not affecting the subject of new trials.

By the St. of 1844, c. 44, all the original criminal jurisdiction of this court in Suffolk, except in capital cases, was transferred to the Municipal Court, and by the St. of 1859, c. 196, all the criminal jurisdiction previously exercised by the Court of Com-

mon Pleas and the Municipal Court was transferred to the Supe-
rior Court.

At the time of the passage of the General Statutes, therefore,
this court had no original criminal jurisdiction, except of capital
cases ; and in these cases sentence has always been passed within
a very short time after the trial and conviction, and a copy of the
record of the conviction and sentence forthwith transmitted to
the Governor, in accordance with the Rev. Sts. c. 139, § 11, and
the Gen. Sts. c. 174, § 24 ; and yet the Gen. Sts. c. 173, § 7, in
terms authorize a petition for a new trial to be presented to this
court at any time within one year after the trial.

The unavoidable conclusion is that so long as that year has not
elapsed, and the sentence has not been carried into execution, the
court is authorized to entertain a petition for a new trial, and it
must                                   *Stand for further hearing.*

At the further hearing a new trial was refused, and the prisoner
was subsequently executed.