HUDSON *vs.* THE STATE OF GEORGIA.

76 727|
88 53|

1. The evidence supports the verdict.

2. Neglect of counsel, as a general rule, affords no ground for granting a new trial.

(*a.*) Even if the failure of the defendant charged with murder to make a statement that the homicide was justifiable, was the result of his own ignorance and of the failure of the counsel whom he had employed to defend him to apprise him of his right, or of their neglect or oversight, it is not made apparent that he suffered detriment therefrom; but it is not clear that the failure to make such statement resulted from such causes.

3. It does not appear that any harm was done the prisoner by the inexperience or inefficiency of the counsel who represented him on the trial, or that any evidence which could elucidate his case was, on this account, withheld from the jury; and it is doubtful, from the judge's certificate, whether either of his counsel was so much under the influence of intoxicating drink as to incapacitate him from the performance of his duty; and while this court does not hold that, if the evidence established the innocence of the prisoner, and that his conviction was in an appreciable degree attributable to the unskillfulness or inefficiency of his counsel, especially as the result of ignorance and drunkenness combined, this would not afford a good ground for a new trial, yet such are not the facts in this case.

May 1, 1886.

Attorney and Client. Criminal Law. Practice in Superior Court. Before Judge CLARKE. Clay Superior Court. September Term, 1885.

Reported in the decision.

R. H. POWELL; W. O. BUTLER, for plaintiff in error.

CLIFFORD ANDERSON, attorney general; J. H. GUERRY, solicitor general, by E. C. BOWER, for the state.

HALL, Justice.

Willis Hudson was indicted jointly with two others, his mother and half sister. The mother, Sarah Ann Roney,

died in prison previously, and he and the sister, Isabella Roney, severed on the trial. He was found guilty, and sentenced to death, and thereupon he made a motion for a new trial, which was overruled by the court, and he brought the case here on bill of exceptions and writ of error.

(1.) Besides the ground that the verdict is against evidence, etc., the others are:

(2.) That through his ignorance, and the oversight and inefficiency of his attorneys, he failed to avail himself of the privilege of making a statement to the effect that he shot deceased in defence of his mother and sister.

(3.) That one of his attorneys was a young man of very limited experience, and the other was so constantly under the influence of liquor during the trial as to incapacitate him for the managment of the case, the result being that his right to make a statement was overlooked, and that his counsel clashed in their arguments before the jury, one contending that the homicide was justifiable, and the other confining his address to the jury to an appeal for mercy, viz., to an appeal that the jury would not condemn him to the gallows, but would send him to the penitentiary for life.

On the first point, the judge certifies that the prisoner did not appear to be unusually ignorant.

On the second point, he certifies that he did not observe anything indicating that either of prisoner's counsel was drunk, and that whilst he noticed counsel treated the case differently in their addresses to the jury, he did not observe any necessary conflict,—one arguing that the case was one of justifiable homicide, whilst the other, without touching on that view of the case, appealed to the jury not to condemn the prisoner to the gallows.

1. If the state's witnesses are to be credited (and the jury had a right to believe them in preference to the defendant's), then this verdict is fully sustained. The only pretense of any palliation or excuse for this homicide is found in the fact testified to by the prisoner's co defend-

ant and sister, that at the time he shot deceased, the latter was attempting to cut her and her mother with his knife; but this fact is directly negatived by the only other witness who was present at the transaction, and indirectly by several others who reached the scene of the conflict shortly after the tragedy, and who made search, but found no knife on the ground at or near the place where the body was lying, nor on the person of deceased, except an ordinary pocket-knife, shut and lying in one of the pockets of his pantaloons. There are other facts testified to which were uncontradicted, and which strongly tended to show the improbability of this story about the use of the knife. The jury were authorized to infer a conspiracy between these three defendants to take the life of deceased, from the fact that Isabella Roney and deceased's wife, after engaging in an angry and violent altercation, separated, the former declaring that she would get her crowd and return and beat the latter. The female defendants in a short time returned, armed with a " battling-stick " and other sticks, and commenced the conflict, and when deceased interposed for the protection of his wife, each of the women seized and held him by an arm, and while thus pinioned, the defendant approached stealthily through the woods from the rear, and, without a word of warning, fired the fatal shot. The defendant was at his house when his mother and sister left it on their hostile expedition, and whether he left before them or not, it is evident that he was present at the critical moment, prepared to act, and that he did act promptly, and with deadly effect.

2. Proceeding to a consideration of the special grounds of the motion for a new trial, we have to remark as to the first of them, that the neglect of counsel, as a general rule, affords no ground for granting a new trial. In Graham and Waterman's work on New Trials (ed. 1855), vol. 3, pp. 15, 29 *et seq.*, it is said to be "a settled rule that a new trial ought not to be awarded on account of the neglect of the agent or attorney of the party applying for it,"

and the reasons given by these authors for the rule, supported as they are by reference to numerous cases, seem to us unanswerable and conclusive. We agree with the attorney general (who is always fair and impartial to the prisoner in such cases, and who, in their management before this court, pursues a course worthy of the highest commendation, and which, we think, might, with great advantage to the public, be followed by others engaged in prosecuting on behalf of the state) that it would be a dangerous practice to hold that the oversight of the defendant's counsel, especially in such cases as the one in question, would be a good ground for a new trial. It is not entirely certain that the statement of the prisoner was not purposely and perhaps prudently withheld by his counsel, or that he might not have consented to its being done in order to afford him, in case of conviction, a chance for another hearing; for it is to be remarked that the counsel who defended him do not make this motion and do not aid in the application for a new trial on this ground; this is done by another, who had no connection with the case until the verdict of conviction was rendered. And even if the defendant's failure to make the statement that the homicide was justifiable, was the result of neglect or oversight on the part of the counsel he had engaged to defend him—was the result of his own ignorance and their failure to apprise him of his rights, or of their neglect or oversight, it is not made apparent that he suffered detriment by being deprived of the benefit of any evidence going to show that the transaction was different in any material particular from that testified to by the state's witnesses; indeed, had the statement, as set forth in this ground of the motion, been made by him, it is not clear that it would have varied in any measure the account given by other witnesses who testified in the case. The statement he swears he would have made was of the most general character, and did not enter at all into detail, and might have been hurtful rather than beneficial to his defence.

3. It does not appear that any harm was done the prisoner by the inexperience or inefficiency of the counsel who represented him on the trial, or that any evidence which could elucidate his case was on this account withheld from the jury. The judge's certificate leaves it doubtful whether either of his counsel was so much under the influence of intoxicating drink as to incapacitate him for the performance of his duties; and while we would hesitate to hold, that if the evidence established the innocence of the prisoner, and that his conviction was in an appreciable degree attributable to the unskillfulness and inefficiency of his counsel, especially if this inefficiency and unskillfulness were the result of ignorance and drunkenness combined, this would not afford good ground for a new trial, yet we are forced to the conclusion that the jury did not err, under the rules of law, in finding him guilty; and when we look to the judge's certificate as to the facts on which the other points depend, we are compelled to determine them in favor of the state. It is needless to remark that we look to the facts as certified by the judge, and not to affidavits of parties or others which may seem to contradict his statements. On this question, see, as cited by the attorney general, 3 Wharton's Am. Cr. L., §§3366, 3367, 3367 (a), 3368 (b), 3369(c), 3372 (a) and particularly 3377 (f).

Judgment affirmed.