COMMONWEALTH *vs.* PAUL DASCALAKIS.

Suffolk.    June 5, 1923. — June 20, 1923.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*District Attorney. Practice, Criminal,* Nolpros, New trial, Counsel appointed by court, Closing argument by district attorney, View. *Attorney at Law.*

Where, pending a hearing on a motion for a new trial of an indictment for murder on which the defendant has been found guilty and has been sentenced to death, it is suggested to the trial judge that, with the assent of the defendant, the district attorney nolpros so much of the indictment as charged murder in the first degree and that the defendant be sentenced for murder in the second degree, and the judge takes the matter under advisement, receiving from the district attorney and from the defendant's counsel documents in writing stating the stipulations of the parties, and finally determines that, owing to sentence having been imposed, he would not assent to such a course, it is manifest that no action was taken by the judge indicating revocation of sentence or acceptance of the *nolle prosequi,* and that no ground exists for the granting of a motion to revoke the sentence of death by reason of any action by the judge.

Statement by RUGG, C.J., of the extent of and limitation upon the power of a district attorney to nolpros an indictment.

The power of a district attorney to nolpros an indictment ceases when sentence is imposed.

Although in the exercise of his judicial discretion in appropriate instances the court has and will exercise the power to set aside a verdict in order to prevent a miscarriage of justice when a decisive or pertinent point affecting substantial rights has not been raised by exception at the trial, it has been the unbroken practice on the criminal, as on the civil side of the court, and even in capital cases, both under the statute and at common law respecting motions for new trial not to examine the original trial anew for detection

of errors which might have been raised by exceptions taken at the trial, and this practice is supported by strong practical considerations and is founded upon a sound interpretation of the statute and the common law.

A motion for a new trial of an indictment for murder was *held* to have been addressed to the sound discretion of the trial judge and it *also was held* that a bill of exceptions to rulings denying it contained nothing to indicate that the judge's discretion was not exercised in a judicial manner.

A judge cannot be required to grant requests for findings of fact upon a motion for a new trial.

The determination of facts by the trial judge on a motion for a new trial is final.

A motion for a new trial of one found guilty of murder, which in part was based upon alleged incompetence of counsel who had been appointed by the court under G. L. c. 277, § 47, to defend the accused, in that he permitted certain inadmissible evidence to be introduced without objection and that he omitted to object to certain alleged improper arguments by the government's attorney, was *held*, after a careful examination of the entire record, rightly to have been denied.

Comment by a district attorney in his closing argument at the trial of an indictment for murder, which is unfavorable to the conduct or character of the defendant, is not objectionable as being unfair, prejudicial or unwarranted and therefore a ground for exception, if it is founded on evidence admitted at the trial; and this is true even if the evidence was incompetent or immaterial, where it also appears that it was admitted without objection.

A conversation between a husband, on trial for murder, and his wife, whether by telephone or otherwise, admitted in evidence in the testimony of the wife, does not as a matter of law require the granting of a motion for a new trial where the record does not show that the conversation was private.

It is not a matter of right for the defendant at the trial of an indictment for murder to accompany the jury on a view: the whole subject rests in the sound discretion of the presiding judge.

No constitutional right of a defendant in an indictment for murder " to meet the witness face to face " nor any right established by G. L. c. 278, § 6, was violated by his not being present at a view taken by the jury under orders of the trial court.

A further alleged ground for a new trial of the indictment above described was that the defendant did not personally waive his right to make an unsworn statement to the jury. The record before this court upon an exception by the defendant to a denial of the motion on that ground did not show that the judge did not find intelligent intention on the part of the defendant not to address the jury. *Held*, that the exception could not be sustained on that ground.

A motion to set aside a verdict and to grant a new trial of an indictment for murder on the ground of newly discovered evidence ordinarily rests in the sound judicial discretion of the trial judge, whose function is to decide whether that which is alleged to be newly discovered evidence is in truth of that nature, whether it is credible in character, whether it relates to vital aspects of the case, whether it is merely cumulative, and whether on a survey of the whole case a miscarriage of justice will result if a new trial is not granted; such considerations are likely to be more accurately weighed

and a wise and just decision rendered by the magistrate who presided throughout the trial than by any one else.

The denial of the motion for a new trial of the indictment for murder above described, so far as it was based on alleged newly discovered evidence, was *held* to have shown no error in law.

It was *held,* that there was nothing in the record to support a contention that rights of the defendant under the Federal Constitution had been violated in any particular by the action by the trial judge in denying the motion for a new trial.

INDICTMENT, found and returned on May 14, 1920, charging the defendant with murder.

In the Superior Court, the defendant was tried before *Keating,* J., and was found guilty. Exceptions saved by the defendant at the trial were overruled by this court in a decision reported in 243 Mass. 519. On January 16, 1923, sentence of death was pronounced. On March 21, 1923, the defendant filed motions for a new trial, which were denied. A writ of error was denied and such denial was upheld by this court in a decision reported in 244 Mass. 568.

Thereafter a further motion for a new trial was filed, the grounds of which, as finally amended, are described in the opinion. At the hearing of this motion, the defendant asked for certain findings of fact and for the following rulings of law:

" 1. As a matter of law the defendant is entitled to a new trial because he was deprived of fundamental rights and thereby denied an opportunity of establishing his innocence.

" 2. As a matter of law defendant is entitled to a new trial because the jury were permitted to take a view of the premises at 517 Columbus Avenue where the crime was alleged to have been committed by him, without his presence.

" 3. As a matter of law the defendant could not waive his right to be present while the jury were taking a view of the premises at 517 Columbus Avenue.

" 4. As a matter of law defendant is entitled to a new trial because the presiding justice failed to adequately protect his rights under the following circumstances. Evidence by the Commonwealth of a prejudicial nature to the effect that after the murder was alleged to have been committed by the defendant the latter went to Canada and, married a woman

from whom he took thirty-four or thirty-five hundred dollars which the assistant district attorney in his closing argument to the jury claimed to be evidence of motive for the defendant killing the deceased. The presiding justice made no reference to the foregoing testimony in his charge to the jury. Although such testimony was not excepted to and although no request for instructions respecting the same was made by defendant's counsel, it was the duty of the presiding justice, in the interest of justice, to give correct and appropriate instructions to the jury respecting such evidence in order to enable them to make a proper application of such testimony.

" 5. The defendant is entitled to a new trial because incompetent and irrelevant testimony was introduced by the Commonwealth of a highly prejudicial nature.

" 6. The evidence respecting the defendant having obtained money from his second wife as hereinbefore set forth was incompetent and irrelevant and of a prejudicial nature.

" 7. Defendant was deprived of a fair trial in violation of the treaties between the United States of America and Greece.

" 8. Defendant was not lawfully informed [of] his constitutional rights under the State and Federal Constitutions and the treaties between the United States of America and Greece.

" 8 (a). Defendant is a subject and a citizen of Greece.

" 9. As a matter of law counsel for defendant at the trial could not waive his right to be present while the jury were taking a view of the premises at 517 Columbus Avenue.

" 10. Defendant as matter of law at the trial was deprived of his rights guaranteed by the Fourteenth Amendment to the Constitution of the United States.

" 11. The defendant requests the court to grant him a new trial, independent of everything contained herein, in the exercise of judicial discretion, in order that substantial justice shall be had.

" 12. The defendant is entitled to a new trial because of newly discovered evidence conclusively showing that Theresa Saulnier, one of the chief witnesses for the government, who

testified at the trial, was at the time of the trial of absolute unreliability, and a perjurer.

" 13. The defendant asks the court to rule as a matter of law that if his counsel at the trial seriously erred in failing to object to and to ask the court to exclude immaterial evidence, and if his said counsel through incompetency or lack of experience put in evidence testimony prejudicial to the interest of the defendant, then the defendant as a matter of law is entitled to a new trial."

Pending the hearing of the motion for a new trial, the motion for revocation of sentence, described in the opinion, was filed and was denied.

The defendant alleged exceptions to, and filed claims of appeal from the denial of his motions.

*J. P. Feeney*, (*J. F. Barry & M. H. Shanly* with him,) for the defendant.

*H. P. Fielding*, Assistant District Attorney, (*G. Alpert*, Special Assistant District Attorney, with him,) for the Commonwealth.

RUGG, C.J. The defendant was convicted of murder in the first degree by verdict returned on June 15, 1922. Motion for new trial was filed and after hearing was denied on June 23, 1922. Exceptions were taken to rulings made at the trial. These were overruled by rescript received in the Superior Court on January 9, 1923. The defendant was then on January 16, 1923, sentenced to death. On that date warrant issued for the execution of the sentence, which was delivered to the sheriff. Copy thereof was sent to the warden of the State prison, and certified copy of the whole record including sentence was delivered to the Governor of the Commonwealth. G. L. c. 279, §§ 43, 44, 45, 46.

Subsequent proceedings have occurred in court. The execution of the sentence has been respited by the Governor until July 11, 1923. On March 21, 1923, motion for new trial on the ground of newly discovered evidence was filed by leave and denied on the following day. On March 23, 1923, a writ of error issued. That was heard by the full court and on April 16, 1923, its order was entered that the judgment stand.

Up to this time the defence had been conducted by an attorney or attorneys appointed by the court. Thereafter different counsel represented the defendant. He filed on April 27, 1923, another motion for a new trial, and amendments to that motion were filed on April 28, 1923. *Dascalakis* v. *Commonwealth*, 244 Mass. 568.

On May 1, 1923, the defendant filed a motion to revoke the sentence imposed on January 16, 1923, on the ground that on April 28, 1923, a *nolle prosequi* of that part of the indictment charging murder in the first degree had been filed and entered. Concerning the merits of this motion, an agreed statement of facts was filed in lieu of evidence. The substance of these facts is that on April 28, 1923, the district attorney and the attorney for the defendant conferred with the judge who presided at the trial of the defendant, in consequence of which suggestion was made by the district attorney that the sentence be revoked, a *nolle prosequi* be entered of so much of the indictment as charged a higher crime than second degree murder, and the sentence required for murder in the second degree be imposed. The judge expressed a tentative purpose to follow the procedure in another case, papers in which were sent for and examined, wherein it was thought that a somewhat analogous course had been pursued. Counsel then withdrew. The district attorney signed a form of *nolle prosequi* to so much of the indictment as charged a higher crime than murder in the second degree, but asking for sentence on that part of the indictment which charged murder in the second degree. The defendant signed a statement of consent to the action of the district attorney, but without prejudice to any right he might have to petition for pardon on the ground of innocence. Both counsel later returned to conference with the judge, to whom the two signed papers were presented. He then stated that the present defendant had been sentenced, differing in that respect from the case referred to at their earlier conference, which at first he had been inclined to follow, and that the motion for a new trial should be heard and considered. The form of *nolle prosequi* and the statement signed by the defendant were returned, the former to

the district attorney and the latter to the counsel for the defendant.

The defendant requested rulings that on these facts a *nolle prosequi* of the tenor stated had been filed and that the sentence theretofore imposed be revoked. The requests for rulings were denied and the motion to revoke sentence was overruled.

Manifestly no action was taken by the judge indicating revocation of sentence or acceptance of the *nolle prosequi*. All the proceedings before him respecting the *nolle prosequi* were *in fieri* until the expression of his final view in effect that it could not be countenanced. Whatever occurred before that was on the part of the judge in the nature of inquiry, suggestion or remark, involving no conclusion and subject to modification or entire change on further reflection and investigation. *Commonwealth* v. *Rice,* 216 Mass. 480, 482. *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31.

The power of a prosecuting officer to enter a *nolle prosequi* is extensive within its sphere. He acts on his official responsibility. He alone is answerable for the exercise of sound discretion. A description of the power of *nolle prosequi* as absolute doubtless may be found in numerous decisions where the point to be decided did not involve consideration of its limitations. But there are limitations arising from the nature of criminal pleading, the constitutional or inherent rights of a defendant, and the character of prosecution for crime.

The offence charged cannot be changed by an attempted *nolle prosequi*. *Commonwealth* v. *Dunster,* 145 Mass. 101. *Commonwealth* v. *Wakelin,* 230 Mass. 567, 572. Power to enter a *nolle prosequi* is absolute in the prosecuting officer from the return of the indictment up to the beginning of trial, except possibly in instances of scandalous abuse of the authority. *Attorney General* v. *Tufts,* 239 Mass. 458, 538, and cases there collected. *State* v. *Thompson,* 3 Hawks, 613. That power is limited, however, after a jury is empanelled. Then the defendant acquires a right to have that tribunal pass upon his guilt by verdict and thus secure a bar to another prosecution for the same offence. That

right of the defendant will be protected by the court. A *nolle prosequi* cannot be entered after the jury has been empanelled without the express or implied consent of the defendant. *Commonwealth* v. *Kimball*, 7 Gray, 328. *Commonwealth* v. *Adams*, 127 Mass. 15, 19. A *nolle prosequi* without the consent of the defendant after the trial has commenced and before verdict has the effect of acquittal. *Commonwealth* v. *Hart*, 149 Mass. 7.

After verdict the absolute power of the prosecuting officer to enter a *nolle prosequi* revives. This has been said in substance in numerous cases. *Commonwealth* v. *Tuck*, 20 Pick. 356, 366. *Commonwealth* v. *Briggs*, 7 Pick. 177. *Commonwealth* v. *Jencks*, 1 Gray, 490. *Jennings* v. *Commonwealth*, 105 Mass. 586. *Commonwealth* v. *Wallace*, 108 Mass. 12. *Commonwealth* v. *Scott*, 121 Mass. 33.

Hitherto it has not been necessary to define the limit of time after verdict within which the power to enter *nolle prosequi* may be exercised. Analysis of the nature of prosecutions for crime demonstrates that it cannot continue after sentence. A *nolle prosequi* is formal expression of a determination on the part of the Attorney General or the district attorney that he will not further prosecute the whole or a separable part of a criminal proceeding. The very nature of the term shows that it cannot spring into existence until a criminal proceeding has been commenced by some process in court, either complaint or indictment. It cannot remain in existence after a criminal prosecution has come to an end. The power of the court over a prosecution for crime is bounded by a final judgment. Sentence is final judgment in a criminal case. That is the end of the case (except under the law as to suspended sentences, *Mariano* v. *Judge of District Court of Central Berkshire*, 243 Mass. 90) so far as concerns the usual and ordinary control of the court. *Commonwealth* v. *Foster*, 122 Mass. 317. *Commonwealth* v. *Soderquist*, 183 Mass. 199. *United States* v. *Mayer*, 235 U. S. 55, 67. It is in substance the same rule applicable to judgment in actions at law. *Mason* v. *Pearson*, 118 Mass. 61; *Karrick* v. *Wetmore*, 210 Mass. 578, and to final decree in suits in equity, *White* v. *Gove*, 183 Mass. 333, 340;

*Martell* v. *Dorey,* 235 Mass. 35, 39. There are ways by which substantial errors may be corrected after sentence in a criminal case. For example, new trial may be granted under G. L. c. 278, § 29, as amended by St. 1922, c. 508, error apparent on the record may be corrected by writ of error, *Murphy* v. *Commonwealth,* 172 Mass. 264, *Walsh* v. *Commonwealth,* 224 Mass. 39, and an unexecuted sentence may be revised before the end of the sitting. *Commonwealth* v. *O'Brien,* 175 Mass. 37; *Commonwealth* v. *Lobel,* 187 Mass. 288; *Commonwealth* v. *Weymouth,* 2 Allen, 144. These judicial functions have no relation to the power of the prosecuting officer to enter a *nolle prosequi,* and do not extend its limits beyond those normally established. The sentence until reversed in some way provided by the law, stands as the final judgment binding upon everybody. In the nature of things the power of the prosecuting officer cannot continue after the power of the court to deal with the case under its general jurisdiction is over.

It is the implication of *Commonwealth* v. *Mead,* 10 Allen, 396, 397, 398, that the entry of a *nolle prosequi* cannot be made after judgment. Although motion for new trial in a capital case pending in this court could be made before sentence, the opinion in *Commonwealth* v. *McElhaney,* 111 Mass. 439, proceeds upon the theory that but for an enabling statute no such motion could be entertained after sentence.

The execution of the sentence belongs to the executive department of government. Warrants in capital cases were issued by the Governor until St. 1876, c. 166. G. L. c. 279, § 43. *Costly* v. *Commonwealth,* 118 Mass. 1, 35. Doubtless the court has power to enforce the execution of sentence by appropriate process, but execution of sentence is in its essence an executive or ministerial and not a judicial function.

After sentence has been pronounced three methods of relief alone are open to a defendant in a criminal case: (1) motion for new trial under the statute, *Commonwealth* v. *Rollins,* 242 Mass. 427, (2) writ of error, (3) appeal for clemency to the Governor. No one of these methods confers upon the prosecuting officer power to enter a *nolle prosequi* so long as the sentence stands.

It is indubitable on this record that the indictment against this defendant had gone to final judgment long before the incident here under review took place. *Attorney General v. Pelletier*, 240 Mass. 264, 310, 311, and cases there collected. Warrant for the execution of the sentence issued to the proper officer and the copies required by law were sent in January of the current year. It is by virtue of executive action that the execution of the sentence has been respited.

It well may be that in certain connections the duty of the prosecuting officer may continue after a sentence. *Lewis v. Carter*, 220 N. Y. 8. The present case is an illustration where doubtless it continues to be the obligation of the district attorney to represent the Commonwealth in respect to these bills of exceptions. The defence of a petition for a writ of error, which can be brought only after sentence, comes within the official cognizance of the Attorney General or a district attorney. But it by no means follows that a *nolle prosequi* can be entered merely because there is further litigation concerning a criminal prosecution after sentence.

It is not necessary to consider whether the exercise of *nolle prosequi* after sentence would be in conflict with the pardoning power vested by c. 2, § 2, art. 8 of the Constitution in the Governor acting by and with the advice and consent of the Council. Nor is there occasion to inquire whether that power ends with the motion by the prosecuting officer for sentence.

It follows that the motion to revoke sentence was denied rightly and that no error of law is disclosed in the action of the judge in respect thereto.

Numerous exceptions were taken concerning the motion for a new trial filed on April 27, 1923. It is assumed in favor of the defendant that his motions to amend that motion were allowed rightly. The case is considered on all grounds stated in the original motion and the several amendments.

There are alleged in the motion for new trial nine main grounds. These fall into two groups. One group relates to matters which occurred in connection with the trial. The other group relates to newly discovered evidence.

The hearing upon the motion and the argument at the bar proceeded apparently upon the contention that as matter of right a defendant in a criminal case may require the court upon a motion for a new trial to review the entire course of the trial in order to determine whether any error of law has been committed. That contention is founded on G. L. c. 278, § 29, as amended by St. 1922, c. 508, to the effect that " The Superior Court may, at the sitting in which an indictment is tried, or within one year thereafter, or, in capital cases, within said year or at any time before sentence, upon motion in writing of the defendant, grant a new trial for any cause for which by law a new trial may be granted or if it appears to the court that justice has not been done . . . ." It is urged that the words " if it appears to the court that justice has not been done " state a cause in addition to other causes for which by law a new trial may be granted, and authorize and require an examination of the entire record of the trial, or so much of it as the defendant desires, by the Superior Court, and by this court on exceptions, in order to ascertain whether justice has been done. That contention is unsound for several reasons.

In the early and leading case of *Commonwealth* v. *Green*, 17 Mass. 515, it was decided that power existed in this court at common law and without an enabling statute to grant a motion for a new trial in a capital case, in order that a " prisoner should be indulged with another opportunity to save his life, if anything had occurred upon the trial, which rendered doubtful the justice or legality of his conviction." The opinion makes plain in other places by reference to " justice " and " public justice " that the court based its conclusion on the accomplishment of justice. That is to say, when that decision was rendered in 1822, this court in the exercise of its common law jurisdiction and duty granted new trials in criminal, including capital, cases if convinced that justice had not been done. That was the same thing as saying that verdicts would be set aside and new trials granted if " it appears to the court that justice has not been done." Speaking of motions for new trials, it was said in 1833 by Chief Justice Shaw in *Cutler* v. *Rice*,

14 Pick. 494, 495, " We know no limit to the power of the court so to interpose, where the plain and manifest dictates of justice require it, taking care that it shall never be so exercised, as to encourage or shield negligence or fraudulent contrivance, in the conduct of trials." These words were used in a civil cause and without reference to any statute. They doubtless state a general principle applicable alike to civil and criminal cases. Since the decision of *Commonwealth* v. *Green,* 17 Mass. 515, the Legislature has enlarged the remedy of motion for new trial as to the time within which it may be filed and allowed, and from time to time has removed doubt as to the courts authorized to exercise the power of granting new trials; but it has established no additional causes for granting a new trial and no other causes were added by St. 1922, c. 508. It is difficult to conceive of any ground for a new trial not comprehended within the sweep of the decision in *Commonwealth* v. *Green,* or the phrase of the statute. The statute states in precise language grounds upon which the court acted without any statute. The grounds are no broader under the statute than without it. *Cutler* v. *Rice,* 14 Pick. 494. *Greene* v. *Farlow,* 138 Mass. 146. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 496. The effect of the present statute, so far as concerns the words " if it appears to the court that justice has not been done," is to confer beyond question upon the Superior Court the power to grant new trials for a cause for which this court as a trial court always had that power. The word " or " in the phrase of the statute authorizing the granting of a new trial, " for any cause for which by law a new trial may be granted or if it appears to the court that justice has not been done," although often indicating disjunctive clauses, *Gaynor's Case,* 217 Mass. 86, in the light of the history of our law as to motions for new trials cannot be construed as adding any new cause for setting aside a verdict. The statute doubtless was enacted out of excess of caution to make certain that the court of common pleas, to which alone in its original form the statute applied, St. 1830, c. 113, § 3, should not forget the broad consideration of the requirements of justice in exercising jurisdiction over

motions for new trials, which had already been declared by this court in *Commonwealth* v. *Green,* 17 Mass. 515, as one of its guiding principles in dealing with the subject of new trials. But the statute had other ends in making clear that courts other than the Supreme Judicial Court possessed the power, as already pointed out. *Commonwealth* v. *McElhaney,* 111 Mass. 439. *Commonwealth* v. *Rollins,* 242 Mass. 427.

It has been the unbroken practice both under the statute and at common law respecting motions for new trial not to examine anew the original trial for the detection of errors which might have been raised by exceptions taken at the trial. In *Commonwealth* v. *Morrison,* 134 Mass. 189, it was said at page 190, " These reasons for a new trial relate entirely to rulings, or omissions to rule, during the progress of the trial and before verdict, to which the defendant had full opportunity to except, if she saw fit, but omitted to do so; and her motion for a new trial was addressed to the discretion of the court, and to the exercise of that discretion she has no ground of exception." The opinion in that case is brief, but it could only have been rendered with reference either to the common law or to Pub. Sts. c. 214, § 28, then in force, now embodied in St. 1922, c. 508, according to both of which, then as now, a new trial must be granted if it appears that justice has not been done. *Commonwealth* v. *Morrison* has been followed in numerous decisions, and it has become the settled practice in criminal cases that motions for new trials are addressed to the discretion of the trial judge and that alleged errors of law occurring at the trial even in capital cases can be reviewed only on exceptions. *Commonwealth* v. *Ruisseau,* 140 Mass. 363. *Loveland* v. *Rand,* 200 Mass. 142, 144. *Commonwealth* v. *Rivet,* 205 Mass. 464. *Commonwealth* v. *Borasky,* 214 Mass. 313, 321. *Commonwealth* v. *Turner,* 224 Mass. 229, 238. *Commonwealth* v. *Russ,* 232 Mass. 58, 82. *Commonwealth* v. *Teregno,* 234 Mass. 56. *Commonwealth* v. *Feci,* 235 Mass. 562, 568, 571. *Commonwealth* v. *Peach,* 239 Mass. 575, 580. *Commonwealth* v. *Cabot,* 241 Mass. 131, 151.

The practice on the criminal side of the court in this particular conforms to that on the civil side. *Ryan* v. *Hickey,* 240 Mass. 46; *Berggren* v. *Mutual Life Ins. Co. of New York,* 231 Mass. 173, and cases collected in each opinion.

Strong practical considerations support this conclusion. Prosecutions for crime ought to end when there has been a fair trial not found on exceptions to be tainted with reversible error. Successive motions for new trial after exceptions taken at the trial have been overruled and after a writ of error has disclosed no error on the record, seeking review in novel form of the trial, might easily be converted into an obstruction of public justice and become an abuse. *Boston Bar Association* v. *Casey,* 227 Mass. 46.

The established practice not to consider on motions for new trial matters which might have been raised by exceptions at the trial is founded upon a sound interpretation of the statute and the common law.

It is assumed that in appropriate instances the court has and will exercise the power to set aside a verdict in order to prevent a miscarriage of justice when a decisive or pertinent point affecting substantial rights has not been raised by exception at the trial. *Brightman* v. *Eddy,* 97 Mass. 478, 481. *Noyes* v. *Noyes,* 224 Mass. 125, and cases collected at page 134. A careful examination of the record in the case at bar shows no occasion for the exercise of that power.

The denial of the motion for a new trial in its general aspects was addressed to the sound discretion of the trial judge. There is nothing in this record to indicate that it was not exercised in a judicial manner. There is no foundation for an inference that every consideration of justice and of substantive law was not given full weight in reaching the decision to deny the motion. *Commonwealth* v. *White,* 147 Mass. 76. *Commonwealth* v. *White,* 148 Mass. 429. *Commonwealth* v. *Best,* 181 Mass. 545.

Numerous requests were made for findings of fact. The judge was not required to make findings of fact. His duty was to pass upon relevant requests for rulings of law and to decide the motion for new trial. So far as facts are concerned,

his determination was final. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 494, 495.

Much stress has been put upon the alleged incompetence or negligence of the counsel assigned by the court who conducted the trial before the jury and all proceedings up to the filing of the present motion. It is provided by G. L. c. 277, § 47, that in capital cases the court shall assign counsel for the prisoner and order paid to him reasonable compensation if the prisoner is otherwise unable to procure counsel. It is the manifest duty of the court to appoint competent counsel able to conduct a faithful and proper defence. *Attorney General, petitioner,* 104 Mass. 537, 542. It has been held to be beyond the power of the court to set aside a verdict because of the inefficiency of counsel. *State* v. *Dreher,* 137 Mo. 11, overruling in this respect the decision in *State* v. *Jones,* 12 Mo. App. 93. See *Hudson* v. *State,* 76 Ga. 727; *State* v. *Dangelo,* 182 Iowa, 1253; *Commonwealth* v. *Benesh,* Thacher's Crim. Cas. 684; *O'Brien* v. *Commonwealth,* 115 Ky. 608; *McLellan* v. *Fuller,* 220 Mass. 494; *Dorr* v. *Massachusetts Title Ins. Co.* 238 Mass. 490. But if it be assumed that such power exists in appropriate cases, see *Rollins* v. *Bay View Auto Parts Co.* 239 Mass. 414, 424, there was no error of law in refusing to grant a new trial on that ground in the case at bar.

Doubtless evidence was admitted in examination of witnesses by the counsel for the defendant which could not have been introduced against his objection. That by itself alone is a matter of slight consequence. It is a not infrequent occurrence in the trial of causes, and even happens in criminal cases, that incompetent, immaterial and irrelevant evidence goes in without objection. Various motives may induce such conduct by trial counsel. In the main it is done for the supposed advantage of the client to obtain evidence which directly or indirectly may operate in his behalf. Disappointment in the substance of evidence thus elicited, or misapprehension in its expected effect, is neither error in law nor incompetence or negligence in fact. It is difficult to reproduce on a printed page the atmosphere of a trial. The situation confronting an attorney during the examination

of a witness, including information conveyed in advance from various sources, anticipation concerning answers to be given, and judgment as to results likely to follow, is generally fraught with difficulty. Methods differ. There are divergent theories as to the wisdom of insistent conformity to every technical rule of evidence. Even tenable objections sometimes are not taken in the belief that an ultimate favorable verdict is more likely without them. See, for example, Bemis' Report of trial of Dr. Webster before the full court, page 44. Experience, capacity, industry, alertness, faithfulness, learning and character make great differences in the efficiency of different members of the bar in the trial of cases. Perfection cannot be demanded even if a standard of perfection could be formulated. All cannot be held to the same degree of excellence. Criticism after an adverse event is easy. It is not necessary to examine in detail the specific examinations and testimony thus introduced now urged as showing negligence and incompetence. It is enough to say that a careful examination of the entire record shows no ground to doubt the correctness of the action of the trial judge in denying the motion for this reason. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 575, 576. *Diaz* v. *United States*, 223 U. S. 442, 450, 451, 452.

Omission to object to improper arguments of opposing counsel within reasonable limits stands on the same footing. Such arguments occasionally pass unnoticed. *Jones* v. *Boston & Northern Street Railway*, 211 Mass. 552. *Chase* v. *Boston Elevated Railway*, 232 Mass. 133, 137. Such conduct cannot ordinarily be counted negligence or incompetence. Irregularities in a trial are not necessarily prejudicial errors. *Commonwealth* v. *McConnell*, 162 Mass. 499.

The argument of the district attorney shows no such appeal to passion or abuse of the defendant as affords warrant for belief that prejudice resulted. Comment unfavorable to the conduct or character of the defendant so far as founded on the evidence of course constituted no error. Incompetent or immaterial evidence, when admitted without objection, is entitled to its probative force and may be made the subject of proper argument. *Hubbard* v. *Allyn*, 200 Mass. 166, 171.

It is only when the argument is unfair, prejudicial and unwarranted that it is ground for exception. *Buckley* v. *Boston Elevated Railway*, 215 Mass. 50. *London* v. *Bay State Street Railway*, 231 Mass. 480. *Commonwealth* v. *Cabot*, 241 Mass. 131, 147. Seasonable objection and exception to improper argument of counsel should be taken. *Commonwealth* v. *Richmond*, 207 Mass. 240, 250. *Commonwealth* v. *Hassan*, 235 Mass. 26, 33. *Commonwealth* v. *Homer*, 235 Mass. 526, 536.

It is argued that a private conversation between husband and wife was admitted without objection. That fact is not established on this record. The nature of the conversation to which reference is made, whether telephonic or face to face, does not stamp it as private. Conversation between husband and wife may be private or in the presence of others. As was said by Chief Justice Holmes in *Nichols* v. *Rosenfeld*, 181 Mass. 525, at page 526, " Such a conversation is not necessarily private. There is no presumption one way or the other." There was no error in the charge in this particular. It is not intimated that in the circumstances here disclosed the motion ought as matter of law or of sound judicial discretion to have been granted even if the testimony now criticised had turned out to have related to statements of the defendant to his wife when no one was present.

The denial of the request that new trial should be granted because of evidence touching financial relations between the defendant and his wife, whom he married in Montreal after the alleged murder, because of the argument based upon it by the prosecuting officer and because of the failure by the judge to make specific charge upon it, shows no error. All these matters could have been made the subject of exceptions at the trial. *Commonwealth* v. *Teregno*, 234 Mass. 56. The evidence may have been desired by the defendant as showing the underlying motive of his wife in volunteering to testify against him or for other reasons. And the evidence was entitled to its probative force in any legitimate direction. *Hubbard* v. *Allyn*, 200 Mass. 166, 171.

The jury took a view of the place where it was alleged that the murder was committed and where the body of the person

who was murdered was found. To permit a view was within the discretion of the court. *Commonwealth* v. *Chance,* 174 Mass. 245, 247.

The defendant did not accompany the jury on the view. The judge well may have believed that the defendant waived his right to go on the view and have discredited the affidavit of the defendant to the contrary. *Commonwealth* v. *Russ,* 232 Mass. 58, 70.

It is urged that, since it has been held that information gained by a jury on a view may be treated as evidence, *Tully* v. *Fitchburg Railroad,* 134 Mass. 499, *Smith* v. *Morse,* 148 Mass. 407, 410, *McMahon* v. *Lynn & Boston Railroad,* 191 Mass. 295, 299, therefore the defendant must be present at the view. The word " view " expresses by its own natural signification its present meaning when used with reference to a trial in court. When a jury takes a view it goes to the place where the main event involved in the trial occurred in order that the jurors may inspect the land, the building, the machine or the other crucial thing about which will centre a considerable part of the testimony. Its chief purpose is to enable the jury to understand better the testimony which has or may be introduced. The essential features may be pointed out by the counsel. No witnesses are heard. The oath to the court officers having charge of a jury on a view is to the effect that no one shall be suffered to address the jury. There can be no comment or discussion. The jury can simply use their eyes. They can obtain information only through sight. One or two attorneys representing both the Commonwealth and the defendant go on the view, it being permissible to them, in the presence of each other and of the officers of the court, merely to point out to the jury " marks, matters, and things," but not otherwise to speak to the jury. The things thus seen by the jurors could not well be banished from their minds. A view often dispenses with the necessity of detailed description by plan or word of mouth. Inevitably that which the jury see on a view will be utilized in reaching a verdict. In that sense that which is disclosed on a view is evidence. It is rightly described as such. Expressions to that effect

are in numerous decisions. *Tully* v. *Fitchburg Railroad,* 134 Mass. 499. *Smith* v. *Morse,* 148 Mass. 407, 410. *Parks* v. *Boston,* 15 Pick. 198, 209. *McMahon* v. *Lynn & Boston Railroad,* 191 Mass. 295. In another more strict and narrow sense a view may be thought not to be evidence. Plainly it is not testimony. It is not given by witnesses. It is not offered in the presence of the judge presiding at the trial. In general, evidence in a jury trial can be given only in the presence of the judge, whose duty it is to be present and to be the directing mind over whatever goes on. The place of trial is not changed while the view is being taken. The trial is merely suspended. It is a part of the right of trial by jury as established by the law of this Commonwealth that each party is entitled to the assistance and protection of the judge throughout the trial. In this aspect the idea of testimony being presented in the absence of the presiding judge is in conflict with fundamental conceptions of trial by jury. *Whitney* v. *Wellesley & Boston Street Railway,* 197 Mass. 495, 502. *Opinion of the Justices,* 207 Mass. 606. *Posell* v. *Herscovitz,* 237 Mass. 513, 515. Moreover, things seen at a view cannot be witnesses in any accurate definition of that term. That which is disclosed by the organs of vision on a view by a jury is mute and generally inanimate. That in this strict sense the view is not in the same category as that commonly termed evidence is manifest from the fact that the practice is firmly established, in cases where otherwise that course ought to be followed, of granting motions for new trials even though there has been a view, and of refusal by this court to deal with exceptions on the theory that the jury may have thus acquired material information not disclosed on the record. *Rigg* v. *Boston, Revere Beach & Lynn Railroad,* 158 Mass. 309. *Munroe* v. *Carlisle,* 176 Mass. 199. *Williams* v. *Citizens' Electric Street Railway,* 184 Mass. 437, 438. *Albright* v. *Sherer,* 223 Mass. 39.

The practice in recent years in capital cases doubtless has been to inquire of the prisoner whether he desires to accompany a jury on the view. But the actual practice as disclosed by highly important capital trials has been that the whole subject has been treated as a function of the court.

In *Commonwealth* v. *Webster*, 5 Cush. 295, the jury were sent on a view without any expression of desire on the part of the defendant and against the objection of his counsel. In *Commonwealth* v. *Knapp*, 9 Pick. 496, 515, the jury was taken on a view with the consent of the defendant. In neither case was anything said to the defendant by the court indicating that under any circumstances he could accompany them. It would be difficult to think of two capital cases tried by more able counsel or presided over by judges of greater learning or of higher passion for justice. They were both tried before the full court. See *Commonwealth* v. *Phelps*, 210 Mass. 78, 82. They must be taken in this respect to state the correct practice in this Commonwealth. The question whether a view should be taken was plainly decided after deliberation by the court. Although there is no discussion of this point in either of those decisions, it is unthinkable that any matter of fundamental right should have escaped the attention of the justices then composing the court.

There are obvious practical objections to the contention that as matter of right a defendant in a criminal case may accompany the jury on a view. The whole subject rests in the sound discretion of the court. That discretion commonly and wisely has been exercised so that the defendant in a criminal case does not accompany the jury on a view.

Plainly whatever rights the defendant had could be waived by him. Apparently the judge found they were so waived in the case at bar. *Valdez* v. *United States*, 244 U. S. 432. *People* v. *Thorn*, 156 N. Y. 286. *State* v. *Slorah*, 118 Maine, 203, 215, 216. *Blythe* v. *State*, 47 Ohio St. 234. *State* v. *Suber*, 89 S. C. 100. *Shular* v. *State*, 105 Ind. 289. *State* v. *Congdon*, 14 R. I. 458.

It follows that the constitutional right of the defendant " to meet the witnesses against him face to face " was not violated. Declaration of Rights, Art. 12. *Commonwealth* v. *Slavski*, 245 Mass. 405.

Here again the discretion of the trial judge would control on a motion for new trial because constitutional rights must be seasonably asserted even in criminal cases. *Lebowitch, petitioner*, 235 Mass. 357, 363.

It follows from what has already been said that manifestly absence of the defendant from the view taken by the jury was no violation of G. L. c. 278, § 6, to the effect that " A person indicted for a felony shall not be tried unless he is personally present during the trial."

In capital cases at the appropriate time the defendant has a right to make an unsworn statement to the jury. *Commonwealth* v. *McConnell*, 162 Mass. 499. That, however, is a right which may be waived. Such waiver need not be expressed by the voice of the defendant. If he were dumb or ignorant of our language there would be difficulty about intelligible expression of that nature. Such waiver may be stated by counsel. There is nothing on this record to show that the judge in denying the motion for new trial did not find intelligent intention on the part of the defendant not to address the jury.

No error is disclosed so far as the motion for new trial rests on allegations of newly discovered evidence. There was testimony at the hearing tending to discredit one of the witnesses on whom at the trial some reliance was placed by the Commonwealth, and to contradict one or more other Commonwealth witnesses. This evidence on the printed record seems to us to fall far short of shaking the fundamental grounds upon which the verdict of guilty probably was rendered by the jury. But the presiding judge saw all the witnesses and heard them testify at the original trial and at the hearing on the motion for new trial. He is in far better position to determine the genuine merits of this newly discovered evidence than are the justices of this court who must depend upon the printed page. We should not be inclined to set aside his decision on this matter even if it seemed much less clearly right than it appears to us to be. Motions to set aside a verdict on this ground ordinarily rest in the sound judicial discretion of the trial judge. It is his function to decide whether that which is alleged to be newly discovered evidence is in truth of that nature, whether it is credible in character, whether it relates to vital aspects of the case, whether it is merely cumulative, and whether on a survey of the whole case a miscarriage of justice will result if a new

trial is not granted. These considerations are likely to be more accurately weighed and a wise and just decision rendered by the magistrate who presided throughout the trial than by any one else. *Commonwealth* v. *Borasky*, 214 Mass. 313, 322, and cases there cited. *Commonwealth* v. *Turner*, 224 Mass. 229, 238. *Commonwealth* v. *Russ*, 232 Mass. 58, 83. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 497. *Berggren* v. *Mutual Life Ins. Co.* 231 Mass. 173, 176, 177. It often has happened that confessedly newly discovered evidence has been held in criminal cases to be not of sufficient weight to be worthy of consideration in view of the overwhelming force of evidence for the Commonwealth. *Commonwealth* v. *Waite*, 5 Mass. 261. *Commonwealth* v. *Green*, 17 Mass. 515. If it be assumed that all the evidence referred to in the motion was found to be newly discovered and pertinent, there was no error in denying the motion.

There is nothing in the record to support a contention that rights of the defendant under the Federal Constitution have been violated in any particular. His trial has been full and fair according to the law of. this Commonwealth. He has been accorded due process of law in every particular. This point, although raised below, has not been argued in this court. It might be treated as waived. It is without merit.

The request for ruling that a new trial ought to be granted because of violation of treaty rights between this nation and Greece has not been argued. It may be treated as waived. It does not appear on this record that the defendant is a subject of Greece. No treaty provision has been called to our attention. We have not been able to find any which can possibly be thought to have been violated. The murder here charged was committed in Boston in this Commonwealth. There was evidence tending to show that the defendant was there at the time. He has been accorded every right in his trial to which any citizen or alien is entitled according to the law of the land. There is no merit in this request.

The errors alleged to have been committed by the judge at the trial do not require discussion. Of course it was his duty to see that there was a fair trial. *Plummer* v. *Boston*

*Elevated Railway*, 198 Mass. 499, 515. *Commonwealth* v. *Cabot*, 241 Mass. 131, 146–151. That duty was performed so far as disclosed on this record.

Every point raised on this record has been considered. Some have been discussed at length which might have been summarily disposed of under the established rules of law. No error of law is disclosed. The several requests for rulings of law were denied rightly. The overruling of the motion for new trial, so far as it rests upon principles of law, shows no error and, so far as it rests on other grounds, was within the discretion of the trial judge. The record is bare of any indication of abuse of sound judicial discretion.

The case is rightly before us on the two bills of exceptions. Appeals bring before us only errors of law apparent on the record. Plainly nothing is before us on the appeals. *Commonwealth* v. *Phelps*, 210 Mass. 360. *Boston, petitioner*, 223 Mass. 36.

> *Appeals dismissed.*
> *Both bills of exceptions overruled.*