## ABBY S. SMITH *vs.* NATHANIEL MORSE.
### SAME *vs.* SAME.

Essex.   November 22, 1888. — January 5, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Constitutional Law — Private Nuisance — High Fence — View by Jury.*

The St. of 1887, c. 348, declaring fences or like structures, "unnecessarily exceeding six feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property," to be private nuisances, and providing a remedy, applies to existing structures subsequently maintained, as well as to those afterwards erected, and is constitutional.

Under § 2 of this act, giving a right of action to "any such owner or occupant,

injured either in his comfort or the enjoyment of his estate by such nuisance," an owner not in occupation may maintain such an action; and a jury may find upon a view that such an owner may be thus injured in his comfort and enjoyment of such estate.

Such a right of action may arise if the controlling motive for allowing such a structure to stand is malevolent, although nothing is done upon it after the passage of the act.

TWO ACTIONS OF TORT under the St. of 1887, c. 348, for maliciously erecting and maintaining a "fence," as alleged in the first count of the declaration in each case, and a "fence or other structure in the nature of a fence," as alleged in the second count of the declaration in the second case, each unnecessarily exceeding six feet in height, at or near the line of adjoining estates of the parties on High Street, in Newburyport. The injury in each case was alleged to be to the plaintiff and to the occupants of her premises in her and their comfort and enjoyment thereof, and to the plaintiff's reversionary interest therein. Writs dated September 17, 1887, and December 22, 1887.

At the trial in the Superior Court, before *Lathrop*, J., it appeared in evidence that the defendant and the plaintiff were the owners of adjoining estates in Newburyport; that the fence was erected by the defendant in 1881, before the plaintiff, or her husband, under whom she claimed, acquired any title to her estate; and that the other structure, or building as it was claimed to be by the defendant, though framed to some extent into the fence, was wholly on land of the defendant, and was erected after the date of the writ in the first case and before the date of the writ in the second; but there was no evidence that the defendant had ever made any repairs, performed any labor, or done anything upon the fence after it was erected in 1881, except that the other structure, or building, was erected as above stated, and it did not appear that what was done to the fence in the erection of this structure or building was done for the purpose of keeping up or repairing the fence.

The plaintiff admitted that neither she nor any member of her family had ever occupied her estate, and that it had always been occupied by tenants. There was no evidence of any injury to the plaintiff or her tenants, except what might have been gathered upon a view by the jury of the premises, made at

the request of the plaintiff. The plaintiff contended that this was sufficient to entitle her to go to the jury.

The judge ruled that the statute was constitutional; but being of the opinion that, assuming that there was evidence to go to the jury that the fence was maintained unnecessarily exceeding six feet in height, and that it was maliciously maintained for the purpose of annoying the owner of the adjoining property, yet the statute did not mean personal annoyance where the owner was not in occupation of the property, also ruled that the plaintiff, it appearing that her estate was occupied solely by tenants, was not entitled to maintain the actions; and directed a verdict for the defendant in each case, and reported the cases for the determination of this court upon the following questions:

" 1. Is the statute on which these actions are brought constitutional?

" 2. Can the plaintiff, not being in occupation of said adjoining property, maintain either action?

" 3. Can the plaintiff recover in the first action, or on the first count in the second action, without proof that the defendant did something more to maintain the fence than merely to permit it to remain after it was built?

" 4. Can the plaintiff recover, without proof of injury to the reversion, other than that which might have been gathered from a view?"

If the rulings were right, judgments were to be entered on the verdicts; otherwise, new trials were to be granted.

*W. H. Niles & G. J. Carr*, for the plaintiff.

*H. I. Bartlett*, for the defendant.

HOLMES, J. These are both actions under St. of 1887, c. 348. We have decided that the statute is constitutional in *Rideout* v. *Knox, ante,* 368. The plaintiff had never occupied the premises, and there was no evidence of any injury to her or to her tenants, except what the jury may have gathered from a view. The judge ruled that as it appeared that the plaintiff's estate was occupied solely by tenants, she was not entitled to recover, and directed verdicts for the defendant.

Notwithstanding the use of the word " nuisance," § 1 of the statute in no sense creates an easement in favor of the plaintiff's

land, but only makes it unlawful to do malevolently what the defendant still has a right to do from other motives. This right of action is given by § 2 to an " owner or occupant, injured either in his comfort or the enjoyment of his estate by such nuisance." This means, we think, that the owners may have an action under some circumstances, although not in occupation.

This action is for causing personal annoyance for the sake of annoying, and to attempt to answer the question whether the annoyance suffered is within the act, by deciding whether there is an injury to the reversion by the principles of the common law, is likely to mislead. We agree that the comfort or enjoyment which must be enjoyed must be comfort or enjoyment in the use of the premises, and that it is not enough that an owner not in occupation is disturbed in his mind when he thinks about the fence. But we are of opinion that such an owner might suffer an actionable injury. If the fence was likely to diminish his rents, or to make it more difficult to get tenants, the injury to his comfort or the enjoyment of his estate on account of that reasonable anticipation would be within the act. The jury might be able to say upon a view that the fence would have that effect. What they see is evidence in the case. *Parks* v. *Boston*, 15 Pick. 198, 209. *Tully* v. *Fitchburg Railroad*, 134 Mass. 499, 503. *Hanks* v. *Boston & Albany Railroad*, 147 Mass. 495.

If the motives for allowing the fence to stand are malicious, as explained in *Rideout* v. *Knox*, the defendant may be liable, although he has done no act upon it since the passage of the statute.

*New trials granted.*