[No. 2981.  Decided May 4, 1900.]

ANNA KARASEK, *Respondent,* v. ANTON PEIER, *Appellant.*

STATUTES—TITLE OF ACT—CURATIVE ACT.

Although a section of an act of the territorial legislature
may have been invalid for the reason that it was passed in con-
travention of Rev. St. U. S. § 1924, which declared that every
law should embrace but one object and that should be expressed
in the title, the defect was fully cured where a subsequent act
of congress expressly ratified and confirmed as a whole the act
of which such section was a part.

SAME—CONSTRUCTION—WHAT INCLUDED UNDER TERM "STRUCTURE."

A fence is a "structure," within the meaning of Bal. Code,
§ 5433, which provides that "an injunction may be granted to
restrain the malicious erection by any owner or lessee of land,
of any structure intended to spite, injure, or annoy an adjoining
proprietor."

SAME—CONSTITUTIONAL LAW.

Although the legislature may not, by express enactment, have
declared the commission of certain acts illegal, a statute empow-
ering the courts to restrain by injunction the commission of such
acts, would not be unconstitutional on that ground, inasmuch as
a law authorizing the enjoining of an act is equivalent to declar-
ing that such act is illegal.

CONSTITUTIONAL LAW—MALICIOUS ERECTION OF STRUCTURES—POLICE
POWER.

Bal. Code, § 5433, which provides that "an injunction may be
granted to restrain the malicious erection, by any owner or
lessee of land, of any structure intended to spite, injure, or an-
noy an adjoining proprietor; and where any owner or lessee of
land has maliciously erected such a structure with such intent,
a mandatory injunction will lie to compel its abatement and re-
moval," is not unconstitutional on the ground of authorizing the
taking of one's property without just compensation, since it is
merely an exercise of the police power of the state, intended to
prohibit the erection of such structures only as are primarily or
solely intended to injure or annoy an adjoining owner, and
which serve no really useful or reasonable purpose.

SAME—DOMINATING MOTIVE OF ERECTION—MALICE.

In order to warrant the issuance of an injunction under a statute authorizing the court to restrain the malicious erection of structures on one's own land, made for the purpose of annoying an adjoining owner, malevolence must be shown as the dominating motive.

Appeal from Superior Court, Pierce County.—Hon. JAMES A. WILLIAMSON, Judge. Affirmed.

*John M. Boyle* and *J. P. Cass,* for appellant.

*W. H. Harris* and *Ernest Hoppe,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—The respondent and the appellant are owners of adjoining lots fronting on G street, in the city of Tacoma. There is situated on the respondent's premises a dwelling house, which is some distance back from the street, but so near the side of her land next to that of the appellant that the roof projects over the boundary line thereof, causing the rain water falling thereon to be discharged on the appellant's lot. The appellant's dwelling house is located about twenty-five feet from the respondent's lot, and the intervening portion of his land is used for a flower garden and lawn. The surface of the lots of both of the parties contiguous to the street is about four feet below the grade of the sidewalk, and gradually descends to the alley in the rear. The respondent's house, it appears, was erected several years before the appellant owned or occupied his premises, and has usually been occupied by tenants, the respondent herself residing in another house located on her land. Before, and at the time, the appellant purchased his lots there was a fence about five feet high along the boundary line of the respondent's lot, but on the land of the appellant, extending from the front of her house to the sidewalk; but at that time

the back part of the lots of both parties seems not to have been inclosed, and the people residing in the neighborhood were in the habit of passing over that portion of appellant's premises in going to and returning from the business portion of the city. The appellant, having concluded to inclose his premises with a more substantial fence, requested the respondent to join him in erecting such a fence on the line dividing their respective lots. This the respondent declined to do, claiming that she had no need of another fence, and that she could not afford to build one. Appellant at the same time also requested the respondent to so alter the roof of her house that water would not fall therefrom upon his land and damage his lawn and flowers, which she also refused to do. These refusals greatly provoked and irritated the appellant, and, according to the testimony of the respondent, he became very angry and said to her: "You will do nothing. Never mind, I will fix you." Thereafter the appellant commenced to construct a high board fence upon his own land, along and close to the boundary line between his lot and that of the respondent. The respondent thereupon instituted this action for the purpose of restraining the appellant from further proceeding with the erection of the fence, averring in her complaint, among other things not necessary to be mentioned, that the fence was maliciously commenced for the purpose of annoying and spiting the plaintiff by shutting off the light from the three windows on the north side of her dwelling house, and for no other purpose; that, if the defendant is allowed to erect and maintain said fence, her house will be darkened thereby in such a manner as to shut out and obscure the light almost entirely from the said three windows, and her house greatly damaged on account thereof; and that the tenant now occupying said house is threatening to, and will, vacate the same if the

plaintiff is permitted to erect and maintain said fence. She prayed that, in case the fence should have been completed before the final hearing and disposition of the cause, a mandatory injunction might issue compelling its removal. The defendant, after denying the material allegations of the complaint, alleged affirmatively in his answer that he was constructing the fence on his own land, as an improvement thereon, and for the proper use and enjoyment of the same, and denied that it was being constructed wantonly or maliciously, with the intent to injure or annoy the plaintiff. Before the cause came on for trial the fence had been completed. It was eight feet high at the street, and something more than nine feet high opposite respondent's windows, owing to the fact that the soil had been "dug out" considerably in that locality. It was constructed of inch boards nailed to stringers attached to posts set in the ground, and unplaned on the side next to respondent's house, and extended up to the top of the lower sash of respondent's windows.

At the trial the court found, among other facts, that the plaintiff used the house in question for the purpose of renting to tenants; that at the time of erecting said fence said dwelling house was occupied by a tenant, who afterwards vacated it on account of the darkening of the windows by said fence; that said fence, owing to the unusual height and character of the same, was and is a nuisance to the plaintiff and her tenants; that said fence was not erected by said defendant for any useful or ornamental purpose, but for the sole purpose of spiting and annoying plaintiff; that a fence five feet high would have answered for any lawful, useful, or ornamental purpose, or for the protection of defendant's said premises; and that, if said fence is allowed to remain at the height it now is, plaintiff will suffer great injury and damage on account thereof.

After filing its findings of fact and conclusions of law, the court adjudged and decreed that,

" Upon the plaintiff's constructing a sufficient gutter or eaves trough under the eaves of the roof of her said dwelling described in the pleadings and findings of fact on file herein, to prevent the water from running off of her roof onto the defendant's premises, she have a peremptory injunction ordering and compelling the defendant to remove or cause to be removed the said fence described in the pleadings on file herein, or cause the same to be cut down to a height not exceeding five feet all the way from G street to a point at the rear end or northeast corner of said dwelling; that, if said defendant shall neglect or refuse to so remove or cut down said fence as herein directed for a period of thirty days after the plaintiff shall have constructed the eaves trough herein specified, the sheriff of Pierce county be, and is hereby, directed to cut down or remove the same at the cost and expense of the said defendant."

This action is based upon § 5433 of Ballinger's Code (2 Hill's Code, § 268), which reads as follows:

"An injunction may be granted to restrain the malicious erection, by any owner or lessee of land, of any structure intended to spite, injure or annoy an adjoining proprietor; and where any owner or lessee of land has maliciously erected such a structure with such intent, a mandatory injunction will lie to compel its abatement and removal."

This section of the statute was enacted in the year 1883, and embodied in an act entitled, "An act to correct errors and supply omissions in the Code of Washington;" and it is contended on the part of the appellant that the section is void for the reason that it is in contravention of § 1924 of the organic act of the territory of Washington, which declares that every law shall embrace but one subject, and that shall be expressed in the title; and the case of *Harland v. Territory,* 3 Wash. T. 131 (13 Pac. 453), is cited in

support of this contention.    It is, no doubt, true that, under the decision in the *Harland Case,* the title of the act in question was insufficient; but, under the rule announced by this court in the subsequent case of *Marston v. Humes,* 3 Wash. 267 (28 Pac. 520), and which has since been followed, it would seem that the title is not open to the objection here urged against it.    But, whether this statute was originally valid or invalid under the organic act, is now quite immaterial, for the act of which it is a part was expressly ratified and confirmed, as a whole, by an act passed by Congress in July, 1884.    See 23 U. S. St. at Large, p. 122, ch. 226.

.The appellant also ·contends that, even if the statute is not invalid upon the ground of insufficiency of title, still it does not cover this case, for the reason that a fence is not a structure, within the meaning of the act.    Webster defines a structure to be:    "That which is built; a building; especially a building of some size or magnificence; an edifice."    (Webster's International Dictionary.)    And hence it is argued that the term "structure," as used in the statute, must mean an offensive building of some kind, apparently serving no purpose but to spite and annoy an adjoining owner.    In support of the position that a fence is not a structure, in contemplation of this statute, the appellant cites the case of *Rutherford v. Cincinnati, etc., R. R. Co.,* 35 Ohio St. 559; and it is true that in that case the supreme court of Ohio held that a railroad was not a structure, within the meaning of a statute providing for mechanic's liens on "any house, mill, manufactory or other building, fixture, bridge or other structure."    But that conclusion was arrived at by the application of the well-known rule of statutory construction, that, where general words follow an enumeration of specific persons or things, they are limited to the same class of persons or things as

those specifically mentioned. But here the word "structure" stands alone, and is not confined to any class of erections, and therefore the above mentioned case is not an authority in favor of appellant's contention. Of course, it is true that a house is a structure, but it is also true that there are many other things which may properly be designated as structures,—such, for instance, as a telegraph line, a wharf, or a bridge. "In the broadest sense, a structure is any production or piece of work artificially built up or composed of parts joined together in some definite manner; any construction." (Century Dictionary.) And we have no doubt that a fence is a structure, within the meaning of this statute.

It is further contended that this section is unconstitutional because it empowers the courts to restrain by injunction the commission of an act not prohibited by any law of the state, or of the United States. This position is clearly not tenable. Although the legislature has not, in express words, declared it illegal for an owner or lessee of land maliciously to erect any structure intended to spite, injure, or annoy an adjoining owner, it has, in legal effect, done so, by providing a remedy in favor of a party thus injured. To say that the commission of a certain act may be enjoined is to declare, substantially, that such act is illegal. If, therefore, this section is unconstitutional, it is not so because it authorizes the enjoining of an act not prohibited by law, but because it is inimical to some provision of the constitution; or, in other words, because the legislature exceeded its constitutional power in its enactment.

"The reasonable enjoyment of one's real estate," says Mr. Tiedeman, "is certainly a vested right, which cannot be interfered with or limited arbitrarily. The constitutional guaranty of protection for all private property ex-

tends equally to the enjoyment and the possession of lands. An arbitrary interference by the government, or by its authority, with the reasonable enjoyment of private lands is a taking of private property without due process of law, which is inhibited by the constitutions. But it is not every use which comes within this constitutional protection. One has a vested right to only a reasonable use of one's lands. It is not difficult to find the rule which determines the limitations upon the lawful ways or manner of using lands. It is the rule which furnishes the solution of every problem in the law of police power, and which is comprehended in the legal maxim, *sic utere tuo, ut alienum non laedas.*" Tiedeman, Limitations of Police Power, p. 423, § 122.

According to this maxim, every one must so use his own property as not to injure the rights of others. Subject to this qualification, every person has the right to exercise complete control over his own land, to the exclusion of all others, and this right has been recognized from the earliest times by the courts. 1 Wood, Nuisances (3d ed.), 127.

Upon the common law maxim above quoted rests, as we have seen, what is termed the police power of the state, which, in its broadest acceptation, means the general power of the state to preserve and promote the public welfare, even at the expense of private rights. 18 Am. & Eng. Enc. Law, 740, 741.

It has often been said that it is difficult, if not impossible, to give an exact and satisfactory definition of "police power;" but it is said by an eminent text writer that this power, "like that of taxation, pervades every department of business and reaches to every interest and every subject of profit or enjoyment." Cooley, Constitutional Limitations (5th ed.), p. 706.

In the exercise of police power the legislature may, to a reasonable extent, and with due regard to the public welfare, prohibit or regulate the use of private property; but

any provision or regulation of the use and enjoyment of land by the owner which is not limited to the prevention of nuisances is opposed to constitutional principles; and the power of the legislature to prohibit nuisances is confined to the prohibition or regulation of such acts as violate, or materially interfere with, the rights of others. Tiedeman, Limitations of Police Power, p. 426, § 122a. See, also, 2 Wood, Nuisances (3d ed.), p. 1098.

The respondent, as we have stated, bases her claim to an injunction upon the allegation in her complaint that the light has been cut off from her windows, and her house made less rentable and consequently damaged, by the erection of the fence by the appellant. But neither, or both, of these effects upon her property constitutes a cause of action in her favor unless they are the result of an unreasonable, and therefore unlawful, use by the appellant of his own premises. 1 Wood, Nuisances (3d ed.), pp. 2, 3.

At common law a man has a right to build a fence or other structure on his own land as high as he pleases, although he thereby completely obstructs his neighbors' light and air, and the motive by which he is actuated is immaterial. *Rideout v. Knox,* 148 Mass. 368 (19 N. E. 390, 2 L. R. A. 81, 12 Am. St. Rep. 560); *Mahan v. Brown,* 13 Wend. 261 (28 Am. Dec. 461); *Letts v. Kessler,* 54 Ohio St. 73 (40 L. R. A. 177, 42 N. E. 765); *Frazier v. Brown,* 12 Ohio St. 294; *Falloon v. Schilling,* 29 Kan. 292 (44 Am. Rep. 642); *Chatfield v. Wilson,* 28 Vt. 49; *Lord v. Langdon,* 91 Me. 221 (39 Atl. 552); *Phelps v. Nowlen,* 72 N. Y. 39 (28 Am. Rep. 93); 2 Washburn, Real Property (5th ed.), p. 362.

The only exception to this rule of law is found in cases where one has acquired, by long user, a right in the nature of an easement to have light pass to his windows across the land of his neighbor. But in the United States the

courts have, with very few exceptions, repudiated the doctrine of ancient lights, as recognized in England, as "unsound in principle and unsuited to the habits and rapid growth of the country." 1 Wood, Nuisances (3d ed.), p. 196, § 150; 6 Am. & Eng. Enc. Law, 152; Tiedeman, Real Property (Enlarged ed.), § 613; Cooley, Torts (2d ed.), pp. 832, 833; *Parker v. Foote,* 19 Wend. 309; *Pierre v. Fernald,* 26 Me. 436 (46 Am. Dec. 573); *Guest v. Reynolds,* 68 Ill. 478 (18 Am. Rep. 570); *Lapere v. Luckey,* 23 Kan. 534 (33 Am. Rep. 196).

An easement of light and air can be acquired in this country only by grant, either expressed or implied, and no such grant is claimed by the respondent in this case. Whatever right, therefore, she may have to an injunction, is derived solely from the statute, and not from the common law; and, in order to ascertain such right, it is necessary to determine the meaning and validity of the statute. The language employed by the legislature is sufficiently comprehensive to authorize an injunction against the erection, by a land owner of a dwelling house or a business block on his own land, providing his motive in so doing is malevolent. If it was the intention of the legislature to prohibit the erection of such structures, we are clearly of the opinion that the statute is, to that extent at least, unconstitutional, for the reason that to prohibit such a use of real estate would, in effect, deprive the owner of his property without due process of law and compensation. But, inasmuch as it must have been well known to the legislature that useful and valuable structures, such as houses, are rarely or never erected merely to annoy or injure an adjoining owner, we feel justified in holding that it was not the intention to prohibit the erection of such structures as really enhance the value, usefulness, or enjoyment of land, but such only as are primarily or solely in-

tended to injure or annoy an adjoining owner, and which serve no really useful and reasonable purpose. It is well settled that it is the duty of the courts to so construe a statute, if practicable, as to give it force and validity, rather than to render it inoperative or void. Cooley, Constitutional Limitations (5th ed.), pp. 220, 222. And we think the construction we have placed upon this section is not inconsistent with its language, and is such as brings it within the power of the legislature, and, as thus construed, the statute is constitutional.

The constitutionality of a statute of Massachusetts, providing that "any fence or other structure in the nature of a fence unnecessarily exceeding six feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance," was called in question in *Rideout v. Knox, supra;* and the act was held constitutional, for the reason, as stated by the court, that it simply restrained a noxious use of the owner's premises, and, although the use was not directly injurious to the public at large, there was a public interest to restrain this kind of aggressive annoyance of one neighbor by another, and to mark a definite limit beyond which it is not lawful to go. In that case it was also held that, in order to maintain an action under the statute, it must be shown that the fence was erected or maintained from an actually malevolent motive, as distinguished from mere technical malice, and that it is not enough to satisfy the words of the statute that malevolence was one of the motives, but that malevolence must be the dominant motive, and motive without which the fence would not have been built or maintained.

In *Lord v. Langdon, supra,* which was a case involving the construction of a statute substantially like that of Massachusetts, the supreme court of Maine approved and ap-

plied the doctrine announced in *Rideout v. Knox,* and accordingly held that the gist of the action consists in the fact that the structure is maliciously kept and maintained, and that, to entitle the plaintiff to recover, it must be shown that malevolence was the dominant motive, and without which the fence would not have been built or maintained.

The Massachusetts statute was again held constitutional in the case of *Smith v. Morse,* 148 Mass. 407 (19 N. E. 393), but the court there decided that, notwithstanding the use of the word "nuisance," the statute did not create an easement in favor of the plaintiff's land, but only made it unlawful to do maliciously what the defendant still had a right to do from other motives. And the same thing may properly be said as to the scope and intention of our statute.

In Connecticut there is a statute providing that, "An injunction may be granted against the malicious erection by an owner or lessee of land of any structure upon it, intended to annoy or injure any proprietor of adjacent land in respect to his use or disposition of the same." This statute, it will be observed, is in substance similar to the first provision of our statute, and it has been construed by the supreme court of that state in at least two cases. In *Harbison v. White,* 46 Conn. 106, the petitioner sought the abatement of a structure erected of rough boards, at a distance of little more than three feet from his block of houses, and which was eighteen feet high and of a nature to exclude the light and air, to a great extent, from the basement, lower story, and one-half of the second story of the block, on the ground that it was erected maliciously and with intent to injure and annoy the petitioner, as an adjoining proprietor of land; and, it appearing to the court that it was in fact maliciously erected and was in-

jurious to the petitioner, a mandatory injunction was sustained against its continuance, notwithstanding the fact that it served to screen the defendant's premises from observation. Upon the question of motive the court said:

" The finding is that malice prompted the erection of the structure in question. That it protected from observation must be regarded as an incident. The statute concerns itself wholly with the motive; therefore it enquires for that; that found to be malicious, the statute disregards the incident, and puts an immediate end to the wrong by injunction."

In that case, however, nothing was said, except in a very general way, as to the quality or quantum of malice necessary to be shown in order to maintain an action under the statute; but in the subsequent and well-considered case of *Gallagher v. Dodge,* 48 Conn. 387 (40 Am. Rep. 182), the court held that, "the malicious intent must be so predominating as a motive as to give character to the structure," and that "it must be so manifest and positive that the real usefulness of the structure will be as manifestly subordinate and incidental." As to the proof of motive, the court was of the opinion that the question whether the structure was maliciously erected is to be determined by its character, location, and use, rather than by an inquiry into the actual state of mind of the person erecting it. Upon this point the learned court observed:

" .   .   . we think no rule can be laid down that is on the whole more easy of application, and more likely to be correct in its application, than that the structure intended by the statute must be one which, from its character, or location, or use, must strike an ordinary beholder as manifestly erected with a leading purpose to annoy the adjoining owner or occupant in his use of his premises."

Although we concede that this rule will generally be more correct in its application than any other general rule

that could be laid down, it is apparent that it cannot be relied on in all cases, to the exclusion of other legitimate evidence. The fence in question in this case is much higher than boundary fences usually are in cities, but it would be very difficult for us to say that an ordinary observer would, from its appearance, or character or location, conclude that it was manifestly erected, for the leading purpose, to spite and annoy the respondent; and yet we are clearly of the opinion, from all the evidence in the record, including the character and location of the fence, that malevolence was the dominating motive in its erection. It is true that the appellant, as a witness in his own behalf at the trial, testified that he built the fence to keep out children and chickens and to support his vines and roses, and not for the purpose of annoying or spiting the respondent. But he virtually admitted on cross-examination that a fence as high as the former one—five feet—would have served as well for such purposes, and that he would not have built the fence as high as he did, if the respondent had helped him build a division fence, "as she should," and put an eaves trough or gutter on the roof of her house.

The judgment and decree is affirmed.

GORDON, C. J., and DUNBAR, J., concur.

REAVIS, J.—I concur in the conclusion; viewing the statute as meaning to confine the power to interfere only where the motive is malevolent in the construction of the structure; and I think that malevolence must clearly appear as the dominating impulse, to make a case within the statute.