# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| W. BRANDT BEDE and LESLIE K. MCLAUGHLIN BEDE, husband and wife, | No. 47790-4-II |
| Appellants, | |
| v. | |
| DARYL W. YOREK and KELLY M. YOREK, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

Worswick, J. — Daryl and Kelly Yorek obtained a judgment against Brandt and Leslie Bede granting the Yoreks a prescriptive easement and awarding them damages and attorney fees. The Bedes appeal, arguing that insufficient evidence supports the trial court's findings of fact and that the trial court applied the wrong statute to award attorney fees. They also appeal the trial court's directed verdict dismissing their spite fence claim. We affirm in part and reverse in part. We (1) reverse the prescriptive easement in part, (2) reverse the award of attorney fees, (3) affirm the dismissal of the spite fence claim, and (4) reverse the trial court's findings and conclusions that the Yoreks' fence does not encroach into the easement and that the Bedes should pay for the partial removal of the fence. We remand for further proceedings consistent with this opinion.

FACTS

Brandt and Leslie Bede lived at a property adjacent to Daryl and Kelly Yorek's property. The two properties informally shared a paved driveway for ingress and egress to the city right-of-way for decades. There was no easement of record for the driveway.

The shared portion of the driveway ran east from the city right-of-way along the property line to a rounded radius curb. At this curb, the driveway split to form two private driveways toward each home. A planter bed was positioned between the private driveways and behind the radius curb. The property line ran through the planter bed. A cedar tree grew within the planter bed, primarily on the Bedes' side. The planter bed and common driveway was bordered by sandstone blocks, but the radius curb was concrete.

Central to this case is the disputed location of a boxwood hedge that grew within the planter bed along the property line. The hedge had been in that location since before 1979, and its precise history is unknown. It consisted of a group of individual boxwood hedge plants. It stood roughly four and a half feet tall. It appears to have once filled a large portion of the planter bed near the rounded curb, sitting both on the Bedes' and the Yoreks' side of the property line. The Bedes maintained the portion of the hedge on their property. It is unclear whether, and there was no evidence submitted at trial that, the Yoreks maintained any part of the boxwood hedge.

In recent years, the boxwood hedge did not thrive under the cedar tree. The Bedes believed the boxwood hedge had become an eyesore, and they removed a portion of it. Brandt Bede believed that he removed the hedge from his own property only, with the exception of one dead boxwood hedge plant that was on the Yoreks' side. He left the remainder of the boxwood

hedge intact, including portions near the radius curb where the driveways split, and near the cedar tree, which portions he believed to be on the Yorek side.

The Yoreks were upset with how much of the hedge the Bedes had removed. The Yoreks later removed a large portion of the remaining hedge. Unable to replace it with another mature boxwood hedge, the Yoreks installed a six-and-a-half-foot tall concrete fence at a cost of $1,123.50. They placed the concrete fence on their side of the property line.

Although the side of the fence that faced the Yoreks was decorative, the side facing the Bedes was unattractive, unfinished concrete. The westernmost part of the fence sliced through the radius curb and protruded out into the paved portion of the driveway by at least 16 inches which, due to its position, blocked 58 inches of the driveway the Bedes historically used to swing their vehicles and trailers. Also, the Bedes believed that the fence's placement caused safety concerns for those exiting their driveway because they could not see vehicles around it.[1] Additionally, the Bedes owned two long boats that could no longer back into the south side of the driveway because the fence's encroachment onto the easement made this task impossible.

The Bedes sued the Yoreks requesting (1) a prescriptive easement over the shared driveway, (2) an injunction compelling the Yoreks to remove the fence because it was a "spite fence," and (3) removal of the encroachments over the driveway—namely, the protruding portion of the concrete fence and certain overhanging vegetation. The Yoreks counterclaimed that the Bedes had committed trespass either under the waste statute (RCW 4.24.630) or the timber trespass statute (RCW 64.12.030). They requested attorney fees under the waste statute.

---

[1] No injuries or damage had occurred from the sight obstruction the concrete fence posed.

The case proceeded to a bench trial, during which the trial court took testimony and considered 98 exhibits, including many photographs, a survey, a survey map, and other documents. The Bedes and Kelly Yorek testified to the facts presented above. Brandt Bede testified that he removed one dead boxwood plant from the Yoreks' property, but that the rest of the plants he removed were on his property. By contrast, Kelly Yorek's testimony was ambiguous about where the hedge was. When her attorney asked her about exhibit 1 (showing the hedge before removal), she replied: "I can't attest to [the Bede's] side of it because I do not ever enter the Bedes' property." Verbatim Report of Proceedings (VRP) (Apr. 15, 2015) at 39. She testified that her understanding was that the hedge was "*primarily* on our property." VRP (Apr. 15, 2015) at 40 (emphasis added). In response to a question of if the boxwood hedge was co-located or located on her property, Kelly Yorek responded: "That's my understanding, yes." VRP (Apr. 15, 2015) at 52.

After the Bedes rested, the Yoreks moved for a directed verdict dismissing the Bedes' spite fence claim. The court granted the motion. It made certain findings of fact, including in relevant part that the Yoreks' concrete fence "serves a useful and reasonable purpose in that it provides [the Yoreks] a privacy screen . . . and fills the space left bare from [the Bedes'] unilateral removal of a mature boxwood hedge that was located previously where the concrete fence is now located." Clerk' Papers (CP) at 119. It also found that there was no evidence that the Yoreks' motivation in installing the fence was spite or malice. It further found that there was no credible evidence that the Yoreks acted solely out of a desire to injure and annoy the Bedes. It found that the Bedes' "subjective opinion that [the Yoreks'] concrete fence is not aesthetically pleasing . . . does not equate to a significant impairment of use and enjoyment of their property,

4

and any such subjective opinions can be mitigated by [the Bedes] by planting vegetation" or otherwise altering the appearance of the side of the fence that faced them. CP at 120. Therefore, it found that the Bedes had failed to carry their burden of proving the elements of a spite fence.

At the conclusion of the trial, the trial court entered written findings of fact as follows in relevant part:

> 1.9    At all times material to this lawsuit, the common driveway commenced at the City of Tacoma right-of-way on Madrona Drive and terminated at the location of a cedar tree at or near a concrete pad located on the Bede property.

> 1.10    The common driveway boundaries are depicted on the document attached to these Findings of Fact and Conclusions of Law as Exhibit "C," which exhibit is incorporated herein by this reference as though fully restated.

CP at 138. Exhibit C was a map of the properties. The trial court further found that the each party had used the portion of the common driveway on the other party's land so as to establish a mutual prescriptive easement over the driveway as shown in exhibit C.[2] In addition to depicting a mutual easement over the paved driveway, exhibit C also showed that the Yoreks had an easement over a triangular area beyond the paved driveway in the planter bed. This area was on the Bedes' side of the property line, covering the area of the planter bed between the property line, the curb, and the cedar tree.

Regarding the boxwood hedge, the trial court found:

> 1.17    An established, mature boxwood hedge, including its root base and stems[,] existed on the inside of the Wilkerson [sic] sandstone curbing bordering the Yorek real property and the common driveway and occupied the space from the Yorek real property to the curb, and belonged to the Yoreks.

---

[2] Exhibit C shows, among other things, that part of the prescriptive driveway easement lay beyond the paved driveway and within the planter bed, under the location of the fence and boxwood hedge.

CP at 139. The trial court found that the Bedes intentionally trespassed onto the Yoreks' property when they removed the boxwood hedge. The trial court found that the Yoreks mitigated their damages from the removal of the boxwood hedge by replacing it with the concrete fence, because replacing it with a boxwood hedge was impracticable. Accordingly, it found that the Bedes owed the Yoreks damages equal to treble the cost of the concrete fence, as well as reasonable attorney fees under the waste statute.

Regarding the concrete fence, the trial court found that the fence was on the Yoreks' property, that it did not unreasonably impede the Bedes' use and enjoyment of the driveway easement, and that it did not create a hazard. However, the trial court incongruously ordered that the Bedes had the right to remove the last panel of the concrete fence, which protruded into the paved driveway, at their own expense.

The trial court made corresponding conclusions of law. Among these were that both parties had established a prescriptive easement over the portion of the other party's property shown in exhibit C. Exhibit C was a map that illustrated, among other things, the trial court's conclusion that the Yoreks had an easement over a triangular portion of the planter bed on the Bedes' side of the property line, beyond the paved driveway. The trial court concluded that the "boxwood hedge was the Yoreks['] and was located within the Yoreks' real property." CP at 144. The trial court also concluded that the Bedes intentionally trespassed and committed waste under the waste statute (RCW 4.24.630) by removing the Yoreks' boxwood hedge, so treble damages and attorney fees were appropriate.

The trial court entered a judgment of $3,690.00, plus $7,990.75 in attorney fees under the waste statute and $551.00 in costs, for a total of $12,231.75, to the Yoreks. The money

6

judgment represented the roughly $1,230.00 cost of the concrete fence, trebled. The judgment

awarded each party a prescriptive easement over the driveway "commencing at the city of

Tacoma right-of-way on Madrona Drive and terminating at the location of a cedar tree at or near

a concrete pad located on the Bede property."[3] The Bedes appeal.

ANALYSIS

I. PRESCRIPTIVE EASEMENT

The Bedes argue that the trial court erred by finding that the Yoreks had a prescriptive

easement in the planter bed. We agree that the trial court erred when it found that the Yoreks

owned the boxwood hedge and that the Yoreks' easement covered a portion of the planter bed.

A.      *Standard of Review*

We review a trial court's decision following a bench trial to determine whether

challenged findings of fact are supported by substantial evidence and whether those findings

support the conclusions of law. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879-80,

73 P.3d 369 (2003). Any unchallenged findings of fact are verities on appeal. *Nguyen v. City of

Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014).

The party claiming error must show that a finding of fact is not supported by substantial

evidence. *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990).

Substantial evidence is a quantum of evidence sufficient to persuade a rational and fair-minded

person that the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169,

---

[3] The judgment, as written, purports to grant both the Bedes and the Yoreks an easement over the driveway terminating at the cedar tree. However, from exhibit C, which was attached to the findings of fact, it is clear that both parties were awarded an easement over the driveway, but the Yoreks alone were granted an easement over an additional portion of the planter bed on the Bedes' side. That is the easement that terminated at the cedar tree in the planter bed.

176, 4 P.3d 123 (2000). We will not disturb findings of fact supported by substantial evidence even if there is conflicting evidence. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). And we defer to the trial court on issues of witness credibility and persuasiveness of the evidence. *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002). We then review whether the findings of fact support the conclusions of law. *Proctor v. Huntington*, 146 Wn. App. 836, 844-45, 192 P.3d 958 (2008).

B.      *Location of Boxwood Hedge*

The Bedes argue that the trial court erred by finding that the boxwood hedge was located on the Yoreks' property. We agree.

Brandt Bede testified that the portions of the boxwood hedge he removed, with the exception of one dead plant, were on his side of the property line. This uncontroverted testimony is consistent with exhibits that show the original extent of the hedge compared with the space after the hedge was removed. These exhibits show that the hedge once filled the space out to the Bedes' curb, but that Brandt Bede removed a thin portion of the hedge along his curb. That space, in turn, corresponds with the area of the Bedes' property just south of the property line within the planter bed. Indeed, even Kelly Yorek's testimony appeared to concede that a portion of the hedge on the Bedes' side was on the Bedes' property. By contrast, the only evidence in the record that the removed portion of the hedge was on the Yoreks' property is Kelly Yorek's ambiguous testimony that it was her understanding that the hedge was "co-located or located" on her property, and that she believed the hedge was "primarily" on her property. VRP (Apr. 15, 2015) at 40, 52.

There is not substantial evidence that the entire boxwood hedge was on the Yoreks' property. The trial court's finding of fact 1.17 and conclusions of law 2.6 are therefore erroneous.

C.      *Yoreks' Easement to Cedar Tree*

The Bedes assign error to several findings of fact in which the trial court found that the Yoreks had a prescriptive easement over the shared driveway, and that the driveway extended to include a triangular portion of the Bedes' property in the planter bed. We agree, and hold that substantial evidence does not support the findings of fact and conclusions of law that form the basis for the Yoreks' prescriptive easement over the planter bed.

To establish a prescriptive easement, the person claiming an easement must use another person's land for 10 years and show that (1) he or she used the land in an open and notorious manner, (2) the use was continuous and uninterrupted, (3) the use occurred over a uniform route, (4) the use was adverse to the landowner, and (5) the use occurred with the knowledge of such owner at a time when he was able in law to assert and enforce his rights. *Gamboa v. Clark*, 183 Wn.2d 38, 43, 348 P.3d 1214 (2015). The person claiming a prescriptive easement bears the burden of proving each element. *Clark*, 183 Wn.2d at 43.

Whether a claimant satisfied the elements of a prescriptive easement generally is a mixed question of fact and law. *Clark*, 183 Wn.2d at 44. We review the question whether essential facts exist for substantial evidence, but we review whether the facts as found establish a prescriptive easement de novo as a question of law. *Lee v. Lozier*, 88 Wn. App. 176, 181, 945 P.2d 214 (1997). On review of a trial court's finding that an easement exists, substantial

9

evidence must support the location and extent of the easement. *See Dunbar v. Heinrich*, 25 Wn. App. 10, 14, 605 P.2d 1272 (1979).

Here, the trial court found that the Yoreks and the Bedes mutually established a prescriptive easement over the paved driveway for ingress and egress. Neither party argues that the trial court erred by finding a prescriptive easement over the paved portion of the driveway. However, the Bedes argue that the trial court erred by finding that the driveway easement continued beyond the radius curb, through the planter bed, terminating at the cedar tree. We agree because no evidence existed to support any of the elements of a prescriptive easement over the Bedes' portion of the planter bed to the cedar tree.[4]

There was no evidence that the Yoreks established any of the elements of a prescriptive easement over the Bedes' side of the planter bed up to the cedar tree. To the extent the trial court found this easement because it considered this area part of the shared driveway, there is simply no evidence in the record that the part of the planter bed up to the cedar tree is part of the driveway or that the Yoreks ever used it as such.

Alternatively, the trial court may have believed the Yoreks established a prescriptive easement over the triangular portion of the planter bed because of their "use" of the property to grow and maintain the removed boxwood hedge. Setting aside the fact that this circumstance would implicate adverse possession rather than prescriptive easement, there was insufficient evidence that the Yoreks used the property in this manner.

Kelly Yorek testified generally that she gardened and maintained the hedges on her property. She testified that she was unfamiliar with the Bedes' side of the boxwood hedge at

---

[4] This is the triangular easement area of the planter bed that the trial court awarded to the Yoreks.

issue in this case. Thus, there was no evidence that the Yoreks ever used the Bedes' property to grow and maintain the boxwood hedge—let alone that any such use met the other elements of a prescriptive easement. Therefore, there was not substantial evidence that the Yoreks established a prescriptive easement over the triangular portion of the planter bed either by use as a driveway or by growing and maintaining the boxwood hedge that once stood there.

Because there is not substantial evidence to support the trial court's finding that the driveway terminated "at the location of a cedar tree at or near a concrete pad located on the Bede property," finding of fact 1.9 is erroneous. CP at 138. Likewise, each finding of fact and corresponding conclusion of law that incorporates exhibit C (the map) showing the "Yorek Easement" over the planter bed is erroneous. CP at 135.

We reverse the prescriptive easement over the planter bed. There is not substantial evidence that the Yoreks owned the boxwood hedge that Brandt Bede removed, nor that the Yoreks established a prescriptive easement over the triangular area the trial court awarded them.

## II. AWARD OF ATTORNEY FEES

The Bedes argue that the trial court erred by awarding attorney fees to the Yoreks under the waste statute, RCW 4.24.630. They argue that the timber trespass statute, RCW 64.12.030, applies instead—and no attorney fees are available under that statute. We agree.

A.      *Standard of Review*

We review the legal basis for an award of attorney's fees de novo. *Hulbert v. Port of Everett*, 159 Wn. App. 389, 407, 245 P.3d 779 (2011). A trial court may award attorney fees only where there is a basis in contract, a statute, or a recognized equitable basis. *Riss v. Angel*, 80 Wn. App. 553, 563, 912 P.2d 1028 (1996). We review a trial court's decision to grant or

deny an award of attorney fees for an abuse of discretion. *Roats v. Blakely Island Maint.*

*Comm'n, Inc.*, 169 Wn. App. 263, 283-84, 279 P.3d 943 (2012).

B.      *Timber Trespass and Waste Statutes*

To resolve whether attorney fees were properly granted, we must determine which of two

statutes applies: the waste statute or the timber trespass statute. The waste statute imposes

liability on one who wrongfully causes waste or injury to another's land:

> (1) Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. For purposes of this section, a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act. Damages recoverable under this section include, but are not limited to, damages for the market value of the property removed or injured, and for injury to the land, including the costs of restoration. In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation related costs.

RCW 4.24.630. However, the statute cannot apply where the timber trespass statute applies:

> (2) This section does not apply in any case where liability for damages is provided under RCW 64.12.030.

RCW 4.24.630.

The timber trespass statute prohibits a person from cutting down, girdling, or otherwise

injuring a tree, timber, or shrub on the land of another:

> Whenever a person shall cut down, girdle, or otherwise injure, or carry off any tree, . . . timber, or shrub on the land of another person, or on the street or highway in front of any person's house . . . without lawful authority, in an action by the person . . . against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

RCW 64.12.030. We held in *Gunn v. Riely*, 185 Wn. App. 517, 526, 344 P.3d 1225 (2015), *review denied*, 183 Wn.2d 1004 (2105) that the timber trespass statute "governs direct trespass against a plaintiff's timber, trees, or shrubs." In *Gunn*, the defendant cut down 107 trees on the plaintiff's property—an action that we found to "fit[] squarely within the bounds of the timber trespass statute." 185 Wn. App. at 527. Therefore, we held that the waste statute did not apply, because by its terms it does not apply when the timber trespass statute does.

In short, the timber statute governs direct trespass against timber, trees, or shrubs, and where it applies, it prevents application of the waste statute. *Gunn*, 185 Wn. App. at 526-27. This dispute now arises because the waste statute, but not the timber trespass statute, provides for an award of attorney fees. RCW 4.24.630. The trial court awarded attorney fees to the Yoreks under the waste statute.

We hold above that there was not substantial evidence that the entire boxwood hedge belonged to the Yoreks. The Bedes could commit waste or timber trespass only against plants that belonged to the Yoreks. RCW 4.24.630; RCW 64.12.030. Accordingly, only one plant is at issue: Brandt Bede testified that he removed one dead boxwood hedge plant on the Yoreks' side of the property line. Here, assuming the dead hedge plant was on the Yoreks' land, the Yoreks could obtain damages under the timber trespass statute; therefore, the waste statute does not apply. The Yoreks' claim fits squarely within the timber trespass statute. They claimed that the Bedes trespassed onto their property and removed a shrub. These allegations, like those in *Gunn*, fall squarely within the timber trespass statute. RCW 64.12.030. Therefore, the waste statute does not apply. RCW 4.24.630(2).

13

The Yoreks argue to the contrary that the timber trespass statute applies only to "merchantable" shrubs or trees, and does not apply to "a neighbor's residential shrubbery." Br. of Resp't at 14. They cite *Pendergrast v. Matichuk*, 189 Wn. App. 854, 873, 355 P.3d 1210 (2015), *review granted*, 185 Wn.2d 1002 (2016). In that case, Division One of this court wrote that one of three purposes of the timber trespass statute's treble damages was to "'discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred.'" 189 Wn. App. at 873 (quoting *Guay v. Wash. Nat. Gas Co.*, 62 Wn.2d 473, 476, 383 P.2d 296 (1963)). But *Pendergrast*'s discussion of the *purpose* of treble damages does not change the plain meaning of the timber trespass statute. The statute in no way limits its application to merchantable shrubs or trees. RCW 64.12.030. We avoid adding words to an unambiguous statute. *See Davis v. Cox*, 183 Wn.2d 269, 282, 351 P.3d 862 (2015).

The timber trespass statute applied to the Bedes' removal of the dead hedge plant on the Yoreks' side of the property line. RCW 64.12.030. Because the waste statute does not apply when the timber trespass statute does, the trial court erred by awarding damages under the waste statute. Findings of fact 1.35, 1.36, and 1.37 are not supported by substantial evidence, because they find that the boxwood hedge belonged to the Yoreks and that the Bedes intentionally trespassed to remove it. Accordingly, conclusions of law 2.7, 2.8, and 2.10 are erroneous, because they award the Yoreks damages and attorney fees under the waste statute for the removal of the entire boxwood hedge.

14

### III. DISMISSAL OF SPITE FENCE CLAIM

The Bedes argue that the trial court erred by dismissing their spite fence claim. We disagree.

A.      *Standard of Review*

Under CR 41(b)(3), the court in a bench trial may dismiss a claim at the close of the plaintiff's case either as a matter of law or a matter of fact. *Commonwealth Real Estate Servs. v. Padilla*, 149 Wn. App. 757, 762, 205 P.3d 937 (2009). Where, as here, the trial court dismisses the case as a matter of fact, we review whether substantial evidence supports the trial court's findings and whether the findings support its conclusions of law. *Padilla*, 149 Wn. App. at 762. This standard is deferential and requires us to view all evidence and inferences in the light most favorable to the prevailing party. *Lewis v. Dep't of Licensing*, 157 Wn.2d 466, 468, 139 P.3d 1078 (2006). We do not substitute our judgment for that of the trial court regarding the weight or credibility of evidence. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

B.      *Trial Court Found Elements Not Met*

The "spite fence" statute, RCW 7.40.030, provides:

> An injunction may be granted to restrain the malicious erection, by any owner or lessee of land, of any structure intended to spite, injure or annoy an adjoining proprietor. And where any owner or lessee of land has maliciously erected such a structure with such intent, a mandatory injunction will lie to compel its abatement and removal.

In *Baillargeon v. Press*, 11 Wn. App. 59, 66, 521 P.2d 746, *review denied*, 84 Wn.2d 1010 (1974), Division One of this court established the elements necessary to prove the erection of a spite fence:

> [I]n order to apply the spite fence statute, RCW 7.40.030, to restrain the erection of a fence or other structure or to abate an existing structure, the court must find (1) that the structure damages the adjoining landowner's enjoyment of his property in some significant degree; (2) that the structure is designed as the result of malice or spitefulness primarily or solely to injure and annoy the adjoining landowner; and (3) that the structure serves no really useful or reasonable purpose.

Each of these three requirements must be met. *Baillargeon*, 11 Wn. App. at 66. Here, the trial court found that the Bedes had presented no evidence to support any of these three elements. Because the trial court correctly found that the Bedes had failed to prove two of the three prongs of a spite fence claim, we affirm the dismissal of the claim.

1. *Malice or Spitefulness*

The Bedes argue that the trial court erred by entering findings of fact 4 and 5, which provided that there was no evidence of the Yoreks' malice or spitefulness in constructing the fence. We disagree.

A plaintiff need not prove the actual mental state of the owner of the alleged spite structure; instead, malice or spitefulness can be proved objectively from evidence including the "character and location" of a structure. *Karasek v. Peier*, 22 Wash. 419, 432, 61 P. 33 (1900).

Here, the trial court found that there was "no evidence" of the Yoreks' malicious or spiteful intentions, and that there was "no credible evidence" that the Yoreks were motivated by a desire to injure and annoy the Bedes. CP at 120. These appear to be findings that the trial court disbelieved the Bedes' opinion that the Yoreks intentionally constructed an ugly fence to spite the Bedes.

The Bedes presented no evidence of subjective malice or spitefulness on the part of the Yoreks when they constructed the spite fence. And there is substantial evidence supporting the trial court's finding that the Yoreks did not intend to injure and annoy the Bedes in constructing

the fence. The Yoreks desired a screen between their property and the Bedes' property, and the concrete fence could fill that need immediately, unlike new boxwood hedge plants. The trial court apparently believed that the fence was not so aesthetically displeasing that its existence was evidence of malice. We do not substitute our judgment for the trial court's in considering the weight and credibility of this evidence. *Quinn*, 153 Wn. App. at 717. We hold that substantial evidence supports findings of fact 4 and 5, because the Bedes failed to present credible evidence that the Yoreks were motivated by malice or spite when they erected the fence.

2. *No Useful or Reasonable Purpose*

The Bedes argue that the trial court erred by entering finding of fact 3, which provides that the Yoreks' concrete fence serves the useful and reasonable purpose of providing a privacy screen between the two properties. We disagree.

The fence was seated between the two properties, and it served to provide the screening that the boxwood hedge once provided. We hold that this privacy and alteration of the Yoreks' view is a useful and reasonable purpose. The Bedes argue that screening cannot be a useful and reasonable purpose, because every fence provides screening. But the trial court is in a position to weigh the placement and context of a fence when considering whether any screening it provides is truly useful and reasonable. In other words, while we do not hold that the purpose of screening necessarily defeats a spite fence claim, we hold that the trial court here did not err by finding that this fence provided a useful and reasonable purpose in screening.

The trial court's findings support its conclusion that the Bedes failed to prove all of the elements of a spite fence. The Bedes failed to support the two *Baillargeon* factors that the fence was designed as the result of malice or spitefulness to injure and annoy the Bedes, and that the

17

fence served no really useful or reasonable purpose. All three *Baillargeon* factors are required to sustain a spite fence claim. 11 Wn. App. at 66. Therefore, we affirm the trial court's conclusion that the Bedes failed to prove that the fence was a spite fence.

## IV. ENCROACHMENT INTO EASEMENT

The Bedes also argue that the trial court erred by allowing the Yoreks' fence to encroach into the driveway easement, and by requiring the Bedes to pay to remove the encroaching portion. We agree.

Actions for prescriptive easements are actions in equity. *See Durrah v. Wright*, 115 Wn. App. 634, 643-44, 63 P.3d 184 (2003). A trial court sitting in equity has broad discretion to fashion remedies. *Cogdell v. 1999 O'Ravez Family*, *LLC*, 153 Wn. App. 384, 390, 220 P.3d 1259 (2009). Equity must be applied meaningfully to correct wrongs. *Cogdell*, 153 Wn. App. at 390. A court's choice of an equitable remedy must be based on tenable grounds or reasons. *Cogdell*, 153 Wn. App. at 391. Generally, courts should order encroachers to remove encroaching structures. *Cogdell*, 153 Wn. App. at 391. Owners of the land burdened by an easement retain the right to use an easement area so long as they do not materially interfere with the easement holder's use of the land. *Veach v. Culp*, 92 Wn.2d 570, 575, 599 P.2d 526 (1979). When enforcing that rule, courts look to the actual use being made of the easement. *Veach*, 92 Wn.2d at 575.

Here, the Bedes and the Yoreks used the paved driveway easement for ingress and egress for decades. The Bedes used the area near the radius curb to move their vehicles and trailers. Accordingly, the trial court correctly found that both parties had established, through actual use, a prescriptive easement over the paved driveway for ingress and egress. *See Veach*, 92 Wn.2d at

575. The testimony and exhibits showed that the fence, by jutting into the driveway over the radius curb, prevented the Bedes from using the paved driveway as they had previously. Notwithstanding this evidence, the trial court found that the fence did not unreasonably impede the Bedes' use or enjoyment of the common driveway easement. Substantial evidence does not support this finding; to the contrary, the evidence established that the fence materially interfered with the Bedes' actual use of the paved easement. Thus, the fence constituted an illegal encroachment into the driveway easement.

The trial court abused its discretion by not requiring the Yoreks to remove the portion of the fence that encroached into the driveway easement. *Cogdell*, 153 Wn. App. at 390-91. There are no tenable grounds or reasons to require the non-encroaching party to pay to remove the encroachment. We hold that the trial court abused its discretion by finding that the Bedes should pay for the removal of the illegally encroaching portion of the Yoreks' fence. *See Cogdell*, 153 Wn. App. at 393.

In conclusion, we reverse the Yoreks' triangular prescriptive easement over the shared planter bed on the Bedes' side of the property line. We reverse the award of attorney fees because the Yoreks did not own the entire boxwood hedge and the timber trespass statute applies. We affirm the dismissal of the spite fence claim. We reverse the trial court's findings and conclusions that the Yoreks' fence does not encroach into the easement and that the Bedes should pay for the partial removal of the fence. We remand for further proceedings consistent with this opinion.

No. 47790-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Bjorgen, C.J.

Johanson, J.